BORMANN, Appellant, vs. CITY OF MILWAUKEE, Respondent.

*May 23 — June 19, 1896.*

*Master and servant: Injury by animals: Assumption of risk.*

An employee assumes the risk of injury by elks and deer kept by his employer, when he voluntarily engages to work inside of the inclosure in which they are kept.

APPEAL from an order of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

The cause was submitted for the appellant on the brief of *Fiebing & Killilea,* and for the respondent on that of *C. H. Hamilton,* city attorney, and *Ernest Bruncken,* assistant city attorney.

For the appellant it was contended, *inter alia,* that the owner or keeper of an animal accustomed to attack mankind,

with knowledge that it is so accustomed, is bound so to secure it as to keep it from doing injury *at his peril.* *Meibus v. Dodge,* 38 Wis. 300; *Lyke v. Van Leuven,* 4 Denio, 127; *Card v. Case,* 5 Man., G. & S. 622.

CASSODAY, C. J. This is an appeal from an order sustaining a demurrer to a complaint alleging, in effect, that the defendant is the owner of the West Side Park, used by it for park purposes; that at the times mentioned it kept and maintained deer and elks therein; that the plaintiff was employed by the defendant, and served as its employee, under directions to him from his superior officers in charge of the park, who were informed and had knowledge of the vicious and dangerous propensities of such animals; that on September 29, 1893, while carrying out the directions of his superior officers lawfully in charge of the park, the plaintiff entered the inclosure where such elks and deer were being kept and maintained by the defendant, and that thereupon and immediately thereafter he was violently attacked and seriously and permanently injured and wounded by said animals; and prayed judgment against the defendant for $10,000 damages by reason of such injuries.

In the absence of any statute to the contrary, and in the case of domestic animals rightfully in the place where the mischief was done, this and other courts have frequently held that the owner cannot be held liable for injuries inflicted by them unless the plaintiff alleges and proves that prior to the injury the defendant had notice of their vicious propensities. *Dearth v. Baker,* 22 Wis. 73; *Kertschacke v. Ludwig,* 28 Wis. 430; *Slinger v. Henneman,* 38 Wis. 504; *Chunot v. Larson,* 43 Wis. 536; *Durrell v. Johnson,* 31 Neb. 796; *Van Leuven v. Lyke,* 1 N. Y. 515, 49 Am. Dec. 346; *Decker v. Gammon,* 44 Me. 322, 69 Am. Dec. 99; *Earl v. Van Alstine,* 8 Barb. 630; *Brice v. Bauer,* 108 N. Y. 428; *Tillett v. Ward,* 10 Q. B. Div. 17; *Sanders v. Teape,* 51 Law

T. Rep. 263. Such domestic animals have been held to include horses, oxen, cows, sheep, swine, dogs, and even bees. *Id.* The complaint in the case at bar is drawn on the same theory, and alleges that at and before the injury the defendant and its officers and agents were informed and had knowledge of the vicious and dangerous propensities of such animals. But in the case of lions, tigers, bears, elephants, monkeys, or any other wild and *ferocious* animals, the owner, as well as others, is conclusively presumed to know that they are vicious and liable to do mischief unless properly confined. This is apparent from numerous references in the cases already cited. *Little v. Madison*, 42 Wis. 643; *S. C.* 49 Wis. 605; *Scribner v. Kelley*, 38 Barb. 14; *May v. Burdett*, 9 Q. B. 101, 9 Adol. & E. (N. S.), 101; *Filburn v. People's P. & A. Co.* 25 Q. B. Div. 258.

Thus the law recognizes two distinct classes of animals, and the only difficulty is in determining whether certain animals belong to the one class or the other. As stated by Lord ESHER, M. R., in the case last cited: "There can be no dispute that there are some animals that every one must recognize as not being dangerous on account of their nature. Whether they are *feræ naturæ* so far as rights of property are concerned is not the question. They certainly are not so in the sense that they are dangerous." In the same case BOWEN, L. J., said: "If, from the experience of mankind, a particular class of animals is dangerous, though individuals may be tamed, a person who keeps one of the class takes the risk of any damage it may do. If, on the other hand, the animal kept belongs to a class which, according to the experience of mankind, is not dangerous and not likely to do mischief, and if the class is dealt with by mankind on that footing, a person may safely keep such an animal, unless he knows that the particular animal that he keeps is likely to do mischief."

The question recurs, What is such experience of men as to

deer and elks? As we look into the standard works we find that they belong to the same family, although elks are the larger; that elks, as well as deer, are naturally shy and timorous, fleeing at the sight of men, but easily domesticated; that such timidity, however, forsakes the males at certain seasons of the year, and then they are liable to attack each other or whatever animal comes in their way. 7 Ency. Brit. 24; 5 Am. Cyc. 756. Certainly it was not unlawful for the defendant, following the example of other metropolitan cities, to keep and maintain such animals in a proper inclosure. *Scribner v. Kelley*, 38 Barb. 14. We find a somewhat similar case to the one at bar in the supreme court of the United States. *Spring Co. v. Edgar*, 99 U. S. 645. In that case the deer were permitted to roam in an open park accessible to visitors. The plaintiff was lawfully in the park at the time she was attacked by one of the bucks and severely injured. It was made to appear in that case that the male deer, at that particular season of the year, was a dangerous animal. A verdict in favor of the injured lady in that case was sustained. Mr. Justice CLIFFORD, speaking for the court, among other things, said: "Animals *feræ naturæ*, as a class, are known to be mischievous; and the rule is well settled that whoever undertakes to keep such an animal in places of public resort is or may be liable for the injuries inflicted by it on a party who is not guilty of negligence and is otherwise without fault." In another connection he said, in effect, that "in actions for injuries by such beasts it is not necessary to allege that the owner knew them to be mischievous, for he is presumed to have such knowledge, from which it follows that he is guilty of negligence in permitting the same to be at large."

As indicated, in the case at bar the defendant kept and maintained the animals in an inclosure, and it appears that the plaintiff was employed by the defendant to work inside of such inclosure, presumably in taking care of the park or

the animals in the park. The plaintiff, therefore, as well as the defendant and its officers and agents, must conclusively be presumed to know the habits and propensities of such animals. With such knowledge, or presumed knowledge, he voluntarily entered upon the service. There is nothing to indicate that he did not know as much about the habits and propensities of the animals as the officers and agents of the defendant, nor that he was induced to enter such service by any misrepresentation or statement on the part of the defendant. The rule is familiar that a servant assumes the ordinary risks incident to the business in which he engages. This is not the case of domestic animals presumably harmless, but which the owner knows to be vicious and the injured person does not; and hence the rule invoked, that a plaintiff in pleading is not required to negative his own contributory negligence, is not applicable.

*By the Court.*— The order of the superior court of Milwaukee county is affirmed.