115 So.2d 851

**Louis R. BRILEY**

v.

**Leon MITCHELL et al.**

No. 44580.

Nov. 9, 1959.

Rehearing Denied Dec. 14, 1959.

Gerard F. Thomas, Jr., Natchitoches, for plaintiff-appellant.

Nelken & Martin, Natchitoches, for defendants-appellees.

SIMON, Justice.

Louis R. Briley, a police officer of the City of Natchitoches, Louisiana, instituted suit against Leon Mitchell and the Natchitoches Locker Plant, Inc., defendants herein, to recover damages for personal injuries sustained when the plaintiff was attempting, in line of his official duties, to recapture a wild, antlered deer which had escaped from the custody of the defendants, while kept on the latters' premises.

For answer the defendants pleaded the general issue, asserting their freedom of any degree of negligence. The action is also defended on first, the alternative ground of contributory negligence in that plaintiff knew or should have known of the potential danger in recapturing a wild deer and of it having heretofore injured other persons, thus demanding such care and caution as would have avoided the accidental injuries complained of; and, in the second alternative, that plaintiff assumed the risks by virtue of his acceptance of employment as a police officer with its inherently dangerous and perilous duties; that his injuries, if any, grow out of the performance of his official duties for which there can be no recovery.

The case, upon motion of the defendants, was tried by a jury which rendered a verdict and judgment in favor of the defendants, and which, on appeal to the Court of Appeal, Second Circuit, was affirmed. On plaintiff's application we granted writs of review.

The facts out of which this controversy arose are not seriously in dispute and may be substantially stated as follows:

On December 1, 1957, the defendant Mitchell, an officer and manager of the co-defendant corporation, while travelling through Arkansas was attracted by a sixteen-point antlered deer staked out near the roadside. Concluding that this animal would be an entertaining contribution to the Natchitoches Christmas Festival and for the publicity of the Christmas program, arrangements were made and it was brought down to Natchitoches. The deer was unloaded at the Peoples Bank Drive-In, staked out in a small lawn, and was subsequently used in the parade and thereafter exhibited to the public. On the date of its escape, January 5, 1958, the wild animal was staked out on the premises of defendant corporation secured by an eighteen foot chain, with a swivel at each end, one swivel attached to a heavy leather collar around the deer's neck, the other attached to a three-quarter inch pipe driven five or six feet in the ground. Fearful of possible harm and as a safe-guard to persons who might tamper with or approach the deer, Mitchell re-

quested the police headquarters for their cooperation by occasionally driving by the premises during their normal patrol. He concedes that these precautions were taken by him knowing that the wild deer was inherently dangerous to the public.

On the aforestated date of its escape plaintiff and two other police officers investigated a complaint that a wild antlered deer was roaming loose in a residential section of the city, threatening harm to the residents and their property. Upon arriving at the scene, the officers decided to attempt to capture the animal which still had the chain attached to his neck. As plaintiff approached the deer it suddenly attacked him, knocking him down. One of the antlers penetrated his right thigh, causing a deep wound and another caused a penetrating wound under the left armpit. Before the animal was finally brought under control by the other officers plaintiff also received numerous abrasions, contusions and lacerations of the chest, arm and legs. Plaintiff was hospitalized for eight days and thereafter was disabled for approximately two months.

In his submitted brief plaintiff relies upon the holding announced in the early case of Vredenburg v. Behan, 33 La.Ann. 627, which, after exhaustive research, is the only reported Louisiana decision dealing with the tort liability of a keeper or custodian of a wild animal.

On the other hand, defendants in their submitted brief invoke the reasoning and holding of the Court of Appeal in the instant case, wherein the Court ingenuously opined that the Vredenburg case, supra, was grounded upon liability by reason of fault and is not inconsistent with the many rulings in the several Court of Appeal cases which assess responsibility only where there exists fault or negligence before tort liability can be established. It is readily observed that the cases therein referred to and relied upon in each instance involve the injurious acts of domestic animals. Under the theory of these cases the defendant was held to be free from liability upon proof that he was not negligent and was without fault. Willis v. Schuster, La. App., 28 So.2d 518; Raziano v. T. J. James & Co., Inc., La.App., 57 So.2d 251, with numerous cases therein cited; Thomas v. Wright, La.App., 75 So.2d 559.

In the instant case the Court of Appeal concluded that the defendants exercised every reasonable care and precaution to prevent the animal's escape, and that the record did not suggest any additional safeguards which foreseeably would have prevented the unfortunate occurrence.

The pertinent parts of Article 2315 of the LSA–Civil Code provide: "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it; * * *."

558

Article 2316 of our LSA–Civil Code reads: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

Article 2317 of the Code also provides: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."

It is readily observed that in Articles 2315 and 2316, supra, liability, in the first instance, is provided for fault, and in the second instance, for negligence. Under the provisions of Article 2317 liability attaches for damages caused by "the things which we have in our custody." This obvious liability is, by its language, to be understood with modifications succeedingly set forth.

■ Article 2321 of our LSA–Civil Code is obviously couched in the most absolute terms: "The owner of an animal is answerable for the damage he has caused * *." Its provisions necessarily are one of the modifications referred to in Article 2317, more particularly when it provides for stricter liability without reservation when damages are the result of a "dangerous or noxious" animal being loosed. It is therefore manifest that in dealing with the acts of domestic animals causing injuries or damages the courts have read into tort liability the requirement of fault or negligence, but have correctly drawn, we think, a clear distinction when dealing with wild animals, in which instance the doctrine of strict and absolute liability becomes an exception or modification (Article 2317) to the general doctrine of fault or negligence.

This distinction was concisely and unmistakably announced in the Vredenburg case, supra. It is the sole and last expression of this court in applying the doctrine of absolute tort liability towards keepers and custodians of wild animals, as contradistinguished from the doctrine of fault or negligence when dealing with domestic animals. We said:

"* * * the responsibility attaching to those who own, control or keep animals ferae naturae, to which class a bear belongs, is of that strict and grave character, as not to be relieved or modified by considerations of the kind presented, nor to be measured by rules that apply to owners or keepers of domestic animals."

In the cited case we further observed that it is not sufficient that defendant has done everything possible to prevent the escape of the wild animal in his custody and it is of no consequence that a third party may have caused the release of the animal. In that case although the boy whose actions caused the bear to escape was

an employee of plaintiff, defendant was still held liable for plaintiff's injuries on the theory that one who keeps wild animals does so at his own peril. The court in explaining its position said:

> "Animals of this kind, such as lions, tigers, bears, are universally recognized as dangerous. It is the duty of those who own or keep them, to keep them in such a manner as to prevent them from doing harm, under any circumstances, whether provoked, as they are liable to be, or not provoked. There must be security against them under all contingencies. Domat, p. 475; Merlin, Répertoire, tome 26, p. 242, verbo Quasi-Delit; Marcadé, tome 5, pp. 272, 273; 1 Law Repts., p. 263; 3 Law Repts., p. 330.

> \*    \*    \*    \*    \*    \*
> "\*  \*  \* the acts of the boy in provoking [the bear] cannot, for these reasons, affect [defendants'] liability."

In the instant case there is evidence that the wild deer may have, to some extent, assumed the appearance of a tame and domesticated animal prior to its attack upon plaintiff. The record discloses that the defendant Mitchell admitted knowing of the animal's dangerous propensities, sufficient unto itself to prompt him to call for police surveillance during their night and day patrols. In the cited case we further observed:

> "Nor does it matter that an animal of this kind may be to some extent tame and domesticated; the natural wildness and ferocity of his nature but sleeps, and is liable to be awakened at any moment, suddenly and unexpectedly, under some provocation, as was the case in this instance."

In regard to proof of negligence or fault on the part of a keeper or custodian of a wild animal as distinguished from that of domestic animals, and as to knowledge, if any, of its dangerous propensities, we further said:

> "The owner of wild and savage beasts, such as lions, tigers, wolves, bears, etc., if he neglects to keep them properly secured, is liable for injuries committed by them according to their nature, without any evidence that he knew them to be ferocious, or that he was negligent in the mode of keeping them, since he is bound in ordinary prudence, to know that fact and to secure them from doing harm."

There can be no dispute over the dangers imposed on the public in the keeping of the wild deer. The record amply establishes this fact. Nor does the fact that this animal may not have freed himself by his own efforts relieve the defendants of liability. The fact that the captive wild deer escaped, no matter how, and thereafter caused injuries is sufficient to impose tort liability.

Our holding in the Vredenburg case, supra, is clearly in line with the law generally in other states. The general law pronounces that the owner of animals ferae naturae or of beasts of a dangerous or vicious class is liable under all circumstances for injuries done by them. The predicate of this rule of liability is the wrongful and unjustifiable conduct of the owner in keeping an animal of that species. Knowledge by the owner or custodian of its vicious nature need not be proved, as he is conclusively presumed to have had such knowledge. Security of the dangerous animal must be assured under all circumstances, for the gravamen of the tort liability is the keeping of the animal, and negligence, strictly speaking, is not an element of the owner's liability.

■ Generally any person has the undoubted right to keep a wild animal, and his right to exhibit it is of necessity judicially recognized, and such exhibitions are licensed everywhere. Being thus privileged, he assumes the obligations of an insurer to the public generally, and as such keeps it at his peril. 2 Cyc. 367; Hale on Torts, p. 459.

■ We are in agreement with the Court of Appeal in the instant case that the pleas of contributory negligence and the "doctrine of assumption of risk" [110 So.2d 170] are without merit. The plea of contributory negligence has no legal foundation in this instance, and defendants do not seriously press the contention which is in effect that a police officer while in the performance of his official duties is not entitled to recover damages. In the performance of these duties it was proper and commendable to assist in the recapturing of the wild animal and thus prevent harm to the public. Whatever danger he was exposed to was an official risk peace officers must necessarily assume, and his right of recovery for damages, because of his official status should not be thus proscribed.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the Court of Appeal be and the same is annulled and set aside.

It is further ordered that this cause be remanded to the Court of Appeal, Second Circuit, and that said Court proceed to determine and award the measure of damages to which plaintiff is entitled commensurate with the facts and circumstances presented in the record and in accordance with the views herein expressed.

All costs of this proceeding to be borne by the defendants.