460 So.2d 685 (1984)
MAYOR AND COUNCIL OF CITY OF MORGAN CITY, Louisiana
v.
JESSE J. FONTENOT, INC., et al.
No. CA 83 1292.
Court of Appeal of Louisiana, First Circuit.
November 20, 1984.
*686 Dale H. Hayes, Morgan City, for plaintiff-appellant.
Donlon Pugh, Lafayette, Maurice P. Mathieu, Houma, Daniel R. Atkinson and Judith A. Chevalier, Baton Rouge, Bert M. Cass, Jr., New Orleans, for defendant-appellee.
Before COLE, CARTER and LANIER, JJ.
LANIER, Judge.
This is a suit for damages by the Mayor and City Council of Morgan City, Louisiana (City), asserting fault under La.C.C. arts. 667-669, 2315 and 2317 and claiming the operators of a fuel bulk plant and the operator of a fuel delivery truck caused a huge fire which directly damaged city property and required the City to expend property and incur substantial expenses to extinguish the blaze. The district court allowed the City to recover for property damage directly caused by the fire but denied the rest of the claim. The City took this appeal. The defendants cast in judgment did not appeal or answer the appeal.

FACTS
On August 14, 1980, Jesse J. Fontenot, Inc. (Fontenot) operated a fuel bulk plant in the City of Morgan City. The petition alleges that on August 14, 1980, Jobbers Oil Transport Co., Inc. (Jotco) owned and operated a tank truck and was delivering fuel or other highly flammable liquid to the Fontenot Bulk Plant when there was ignition of the fuel or other flammable liquid causing an explosion and fire that engulfed adjacent business premises and destroyed buildings in Morgan City, Louisiana. The City responded to the fire with professional fire, police and electrician services to control and extinguish the blaze. During the course of fighting the fire, the City also incurred damages to and some loss of its fire fighting equipment.
Fontenot, Jotco and their insurers[1] stipulated liability, not to exceed the limits of liability in the applicable insurance policies. Subsequently, the parties also stipulated that the City's total claim was for $38,267.03 which was itemized as follows:

Damaged fire trucks $12,500.00
Damaged/lost fire
 equipment and nozzles 2,187.96
Chemical foam 9,720.00
Damaged electrical 5,477.77
 equipment
Damaged city streets 200.00

*687
Overtime pay:
 Policemen $2,247.61
 Firemen 3,897.13
 Electricians 2,036.56
 _________
 $8,181.30
 Total $38,267.03
 __________

The district court rendered judgment in favor of the City and against Fontenot, Jotco, Puritan and Pacific[2] for $5,677.77 for damages directly caused by the fire to the City's electrical equipment and streets. The district court denied recovery on the City's claim for $32,587.26 for property expended or damaged and professional services rendered in fighting the fire.
RECOVERY BY A POLITICAL SUBDIVISION FOR DAMAGES AND EXPENSES INCURRED IN A RESCUE OPERATION
Fontenot and Jotco were under a duty to carefully handle the combustible and/or flammable liquids in their control or possession so that an unreasonable risk of harm would not be created for others. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972); Ayala v. Bailey Electric Company, Inc., 318 So.2d 645 (La.App. 4th Cir.1975), writ granted, 322 So.2d 770 (La.1975), dismissed on joint stipulation. By stipulating liability, Fontenot, Jotco and their insurers admitted that this duty had been breached (fault) and that this fault was a cause-in-fact of harm to the City. Wright v. O'Neal, 427 So.2d 852 (La.1983); Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1982). However, for the violation of this duty to be a legal cause of injury, it must not only be a cause-in-fact of the injury, but the risk which caused the loss must be within the ambit of the protection of the duty. Jacoby v. State, 434 So.2d 570 (La.App. 1st Cir.1983), writ denied, 441 So.2d 771 (La. 1983) and the cases cited therein.
It is generally held that the risk of injury to a gratuitous rescuer is within the ambit of protection of the general duty not to create an unreasonable risk of harm to others. Stevenson v. Delahaye, 310 So.2d 651 (La.App. 1st Cir.1975); F. Stone, 12 Louisiana Civil Law Treatise, Tort Doctrine § 282, at 391-392 (1977); Kaplan, Recovery by the Rescuer, 28 La.L.Rev. 609 (1968). This rule has been applied where the fault of a tortfeasor caused a fire and a gratuitous rescuer was subsequently injured. Inseco v. Cambridge Mutual Fire Insurance Company, 447 So.2d 606 (La. App. 3rd Cir.1984), writs denied, 449 So.2d 1349, 1350 (La.1984). However, recovery has been denied to professional rescuers who are injured in rescue operations. Zimmerman, Negligence Actions by Police Officers and Firefighters: A Need for a Professional Rescuers Rule, 66 Cal.L.Rev. 585 (1978). In Thompson v. Warehouse Corporation of America, Inc., 337 So.2d 572, 573 (La.App. 4th Cir.1976), a professional firefighter was injured while fighting a fire, and the court observed as follows:
The warehouse sprinkler system was partially inoperative because of closed valves that should have been open. The question is whether defendant is responsible for injuries resulting to a firefighter from its negligence in not having the valves open. We hold that negligent maintenance of a sprinkler system, which may result in a fire's burning more fiercely or with denser smoke or otherwise more dangerously, is not a breach of dutyfault within La.C.C. 2315towards the firefighters who may come to fight the fire.
...
But we are unable to distinguish negligent sprinkler maintenance from ordinary negligence which might contribute to the start of the fire. We deem it unreasonable to hold that an owner owes it to firefighters not to let his building catch fire. To the contrary: it is the firefighters' duty to the property owners (and neighbors) to save them from their negligence. In the absence of *688 proof of personal negligence so gross as to be tantamount to arson or to trap-setting by the owner, we cannot hold a building owner liable to firefighters for negligence causing or worsening fire which caused the firefighters' injury. [Emphasis added].
A professional rescuer may recover, however, for injury caused by a risk which is independent of the emergency or problem he has assumed the duty to remedy. Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971); Briley v. Mitchell, 238 La. 551, 115 So.2d 851 (1959).
The City has acknowledged in brief that it has exercised the power granted by La.R.S. 33:402(8) to provide for the prevention and extinguishment of fires and to organize and maintain a fire department. By assuming the responsibility of providing for such "rescue" services, the City has placed itself in a situation analogous to that of the professional rescuer. In City of Bridgeton v. B.P. Oil, Inc., 146 N.J.Super. 169, 369 A.2d 49, 54-55 (1976), the Superior Court of New Jersey ruled that a municipality was not entitled to recover from a tortfeasor for costs of services provided by its fire department to prevent the spread of fuel oil and gasoline leaking from the tortfeasor's property with the following language:
Governments, to paraphrase the Declaration of Independence, have been instituted among men to do for the public good those things which the people agree are best left to the public sector. Since our country was founded there has devolved a widening horizon of public activity. True, certain activities have developed in areas from which revenue has been derived, such as turnpikes, water or power supply, or postal services. Nevertheless, there remains an area where the people as a whole absorb the cost of such servicesfor example, the prevention and detection of crime. No one expects the rendering of a bill (other than a tax bill) if a policeman apprehends a thief. The services of fire fighters are within this ambit and may not be billed as a public utility.....
The court further holds that a municipal corporation may not recover as damages the costs of its governmental operations which it was created to perform, but it is not to be denied a recovery for other losses by reason of its status as a municipal corporation. Cost accounting must have a limiting factor somewhere, and that limit is reached when the function affected is a part of the act of government.
Thus, if the city were the owner of adjacent land damaged by escaping oil, it like all landowners, may recover damages caused by this escape. It cannot, however, recover costs incurred in fire prevention or extinguishment. That is the very purpose of government for which it was created.
We find this reasoning persuasive and adopt it as our own.[3] The duty imposed on Fontenot and Jotco to carefully handle flammable liquids does not include within the ambit of its protection the risk that public property and funds will be expended to fight a fire caused by a breach of that duty.

OTHER THEORIES OF RECOVERY
The City has raised theories of equity (actio de in rem verso and quantum meruit) as grounds for recovery. However, equity applies only when there is no express or positive law governing. La. C.C. art. 21. In the present case, tort law (La.C.C. arts. 2315 and 2317) applies to the conduct of the parties, precluding a resort to equity. Cf. Terrebonne Parish Police Jury v. Kelly, 428 So.2d 1092 (La.App. 1st Cir.1983). The City also argues a theory called theorie de I'institution. This theory applies to contracts governing public service and advocates the interpretation of *689 these contracts in a way consistent with the better performance of the services being rendered. See S. Litvinoff, 6 Louisiana Civil Law Treatise, Obligations § 193 (1969). This doctrine is inapplicable to the present case because no contract existed between the City and Fontenot or Jotco for the fire protection provided by the City.

DECREE
For the foregoing reasons, the judgment of the district court is correct and is affirmed. The City is cast for the cost of this appeal of $50.00.
AFFIRMED.
NOTES
[1] Jotco carried primary coverage of $300,000 with Western Preferred Casualty Company; intermediate coverage of $200,000 with National Fire & Marine Insurance Co.; and excess coverage of $1,000,000 with Puritan Insurance Company (Puritan). Fontenot had primary coverage of $300,000 with Travelers Indemnity Company and excess coverage of $5,000,000 with Pacific Employers Insurance Company (Pacific).
[2] Apparently, the limits of liability of the other insurers had been expended in satisfaction of other claims.
[3] Query: Could a volunteer fireman recover for injuries sustained while fighting a fire with equipment purchased with public funds?