520 So.2d 1213 (1988)
Gregory J. RAZIANO
v.
LINCOLN PROPERTY COMPANY, et al. Consolidated with
RELIANCE INSURANCE COMPANY
v.
LINCOLN PROPERTY COMPANY, et al.
Nos. 87-CA-515, 87-CA-516, 87-CA-665 and 87-CA-666.
Court of Appeal of Louisiana, Fifth Circuit.
February 8, 1988.
*1214 Lawrence D. Wiedemann, Fritz Wiedemann, Wiedemann & Fransen, New Orleans, for plaintiff-appellant, Gregory J. Raziano.
Dennis J. Phayer, Glorioso, Welcker & Zaunbrecher, New Orleans, for defendants-appellees, Lincoln Property Co., et al.
Before KLIEBERT, BOWES and GOTHARD, JJ.
BOWES, Judge.
The present appeals are taken by the plaintiff(s) on two consolidated cases arising out of a single accident. The first appeal is from a judgment dismissing the claim of plaintiff's wife for loss of consortium as having prescribed. The second appeal is from a judgment granting the defendants' motion for summary judgment.
Plaintiff-appellant Gregory Raziano was a captain for the Kenner Fire Department on the evening of January 21, 1984. Off-duty that evening, he was nevertheless also a volunteer fireman, as were approximately 95% of the Kenner firemen and, as such, was not compensated. Through a special radio system, Mr. Raziano received the initial alarm of a fire at an apartment complex under construction; however, since he was off-duty, he did not immediately respond. When the second alarm was struck, he went to the scene of the fire. Under the rules of the Kenner Fire Department, the employees were to be available 24 hours a day always in case of second or multi-alarm fires. However, at the scene of the fire, Raziano acted in his capacity as a volunteer under the direction of the on-duty Kenner captain.
The scene of the fire was an apartment complex under construction at the Relais Esplanade complex in Kenner. The fire was blazing hard and advancing rapidly *1215 when Raziano arrived. After attempting for some time to extinguish some flaming building material, the chief ordered Raziano and other firemen with whom he was working to "pull out" from the burning building, because the department was going to deluge the fire with a master stream on an elevated platform. Smaller lines which Raziano and some others had been using were shut down and Raziano had to pick up those lines and drag them back to the pumper truck. In the process, Raziano was walking in ankle deep water, the result of thousands of gallons of water used to fight the fire, when he suddenly stepped into a deep hole filled with water. He fell until his heels struck the hard bottom of the hole, at which time he felt a "crunching" in his back. It took two men to pull him from the hole. On the morning after the fire, Raziano returned to the scene in his official capacity as captain, and saw that the hole into which he had fallen was an excavation for an unfinished sewer main for the complex.
As a result of the accident, plaintiff Gregory Raziano filed suit for damages on January 21, 1985. On February 11, 1987, Mrs. Raziano was added as a party-plaintiff by virtue of a supplemental and amending petition, claiming loss of consortium. Defendants excepted to this petition, averring that Mrs. Raziano's cause of action had prescribed. This judgment gave rise to the first appeal. On May 15, 1987, all defendants moved for summary judgment, seeking to dismiss Mr. Raziano's claim based on a doctrine of law known as the "fireman's rule." The trial court rendered judgment in favor of defendants and dismissed plaintiff's claim. This is the second judgment on appeal.

EXCEPTION OF PRESCRIPTION
The trial court found that Mrs. Raziano's action for loss of consortium was barred by the liberative prescription of one year. The accident occurred on January 21, 1984; the original petition by Mr. Raziano was filed on January 21, 1985; and Mrs. Raziano's petition for loss of consortium was filed on February 11, 1987. Although the amending petition added new defendants, as well as Mrs. Raziano's cause of action, the exception of prescription was taken regarding only the consortium claim itself.
The original petition prayed for damages on behalf of Mr. Raziano for lost wages, medical bills, mental and physical pain and anguish, and "miscellaneous losses, connected with his family life, past, present, and future." The amending petition stated Mrs. Raziano's action to be "loss of love, affection, care, attention, companionship, protection and consortium."
In Giroir v. South La. Medical Ctr., Etc., 475 So.2d 1040 (La.1985), the Supreme Court permitted the addition of decedent's children as parties-plaintiff by supplemental and amending petition. The original petition had named decedent's husband as administrator of her estate. In so permitting the amendment, the court discussed La.C.C.P. Art. 1153[1] and stated:
Accordingly, an amendment adding or substituting a plaintiff should be allowed to relate back if (1) the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; (3) the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated; (4) the defendant will not be prejudiced in preparing and conducting his defense.
The court found that the defendants in Giroir knew or should have known of the existence of the Giroir children because:
First, because the facts in the original petition gave defendants notice of, and did not negative, the reasonable possibility that a surviving child of the deceased 55 year old married woman would be *1216 entitled to recover as a survivor or wrongful death beneficiary under Civil Code article 2315 and might later assert a claim....
The court found that defendants had actual notice of the existence of the children from medical records, etc. The court went on to find the children were not wholly new or unrelated to their father with respect to the death of their mother, and that the addition of the children did not change the basic underlying claimthere, the malpractice action. Finally, the court felt that the defendants failed to show that they were in any way injured or impaired in their ability to investigate, prepare defenses, etc., and that the added actions arose from the same conduct alleged in the original pleading. The Court stated:
Under the circumstances of this case, no essential protective purpose of the prescriptive statute is violated by permitting relation back of the post prescription amendment based on the same factual situation pleaded in the original timely petition. Through the original pleading the defendants knew that judicial relief was sought arising from the general factual situation alleged, and they were put on notice that their evidence concerning it should be collected and preserved. The fundamental purpose of prescription statutes is only to afford a defendant economic and psychological security if no claim is made timely, and to protect him from stale claims and from the loss of non-preservation of relevant proof. They are designed to protect him against lack of notification of a formal claim within the prescriptive period, not against pleading mistakes that his opponent makes in filing the formal claim within the period.
In Gunter v. Plauche, 439 So.2d 437 (La.1983), the court allowed an amending petition to add another cause of action arising out of the same transaction as alleged in the original petition. The court found that the original claim of surgical malpractice had a clear factual connexity to the amending petition's claim of lack of informed consent to medical treatment, and opined thusly:
Both causes of action arose out of the conduct, transaction, or occurrence set forth in the original petition.... The transaction or occurrence giving rise to the demand or object of the suit remained unchanged by the amendment, and, even if the state of facts which constitute the defendant's wrong differ enough so that two causes of action exist, the facts of the transaction which created both duties is similar enough to support a relation back of the amending petition under art. 1153.
See also Dykes v. Peabody Shoreline Geophysical, 482 So.2d 662 (La.App. 1 Cir. 1985) in which the original plaintiffs sought to add their two minor children as plaintiffs by an amended petition. The trial court allowed such amendment and was affirmed by the Court of Appeal.
Further, see Bertrand v. St. Paul Fire & Marine Ins. Co., 491 So.2d 474 (La.App. 3 Cir.1986), in which an amending petition expressing a malpractice demand was allowed to relate back to a timely filed injunction proceeding between the same parties. There, the court, citing Giroir, and reviewing other cases to support permitting the amendment stated:
We do not perceive it to be essential for the application of Article 1153 that the demands of the two pleadings be the same. The article does not say so. The only requirement of connexity is that the action in the amended petition arise out of the "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." As we have seen from the above citations, identity of the demand is not required in the federal courts, nor has it been required in this state.
Elsewhere, the court said:
A reliance upon the importance of notice rather than procedural technicalities has enabled Louisiana courts to give Article 1153 a liberal interpretation. [emphasis supplied]
. . . . .
A liberal interpretation of our Article 1153 is also encouraged by two familiar *1217 rules of construction found in our law. The first is La.C.C.P. art. 5051, which says that the articles of the Code of Civil Procedure are to be construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves. The second is, correlatively, "prescription statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished by it." Odessa House v. Goss, 453 So.2d 299 (La.App. 3 Cir.1984). [emphasis supplied]
Under the above-cited statutory and jurisprudential guidelines, we think it clear that whether the amending petition in the present case is viewed as either adding a new plaintiff (Mrs. Raziano) or stating a different cause of action (loss of consortium), the amendment unquestionably relates back to the original petition within the meaning of C.C.P. art. 1153. The claim arises out of the same occurrence pleaded in Mr. Raziano's petitionthe alleged negligence of the defendants resulting in Mr. Raziano's accident. The defendants should have known of the existence of Mrs. Raziano by the allegations of the original petition relating to "family life." Whether defendants had actual notice by virtue of medical reports as in Giroir is not evident at this time. Certainly there is a sufficient relationship between Mr. and Mrs. Raziano so that Mrs. Raziano's claim is not wholly new or unrelated.
We take cognizance that the amendment theories mentioned above may appear to many to change some long cherished and well established previous interpretations regarding prescription. Nevertheless, they certainly are the law of the land today, by which we are all bound, and appear to be in step with current trends toward liberalized pleadings to grant greater equitable results.
Finally, defendants have not shown, nor do they contend on appeal, that they were injured by the amendment. There was timely notice of the factual situation giving rise to the claim, and since Mrs. Raziano's claim is derived from the identical facts, defendants have had ample time to investigate the claim. In addition, the case has been continued without date, so defendant now has ample discovery opportunities to prepare for the claim, if necessary.
Therefore, we find that the trial judge erred in maintaining defendants' exception of prescription and we reverse that judgment.

SUMMARY JUDGMENT
In its motion for summary judgment, the defendants contended that plaintiff was precluded from filing suit under the doctrine called the "fireman's rule." Essentially, this doctrine is one which states that a professional rescuer injured in the performance of his professional duties "assumes the risk" of such injury and is not entitled to damages. See, for instance, Thompson v. Warehouse Corporation of America, Inc., 337 So.2d 572 (La.App. 4 Cir.1976), in which it was held that a defendant owner's negligence in not maintaining its sprinkler systems was not a breach of duty towards firefighters who may come to fight the fire:
We deem it unreasonable to hold that an owner owes it to firefighters not to let his building catch fire. To the contrary: it is the firefighters' duty to the property owners (and neighbors) to save them from their negligence. In the absence of proof of personal negligence so gross as to be tantamount to arson or to trap-setting by the owner, we cannot hold a building owner liable to firefighters for negligence causing or worsening fire which caused the firefighters' injury. Thompson, supra.

In his reasons for granting summary judgment in the present case, the trial judge stated:
The plaintiff was injured when he fell into a partially excavated sewer main which was covered with water as a result of the firefighting activities. Plaintiff contends the defendants were negligent in failing to properly mark the excavation. The court finds the defendants cannot be held liable to plaintiff for injuries sustained while fighting the fire.
*1218 Citing Thompson, supra, and Solis v. Civic Center Site Development Co., Inc., 385 So.2d 1229 (La.App. 4 Cir.1980).
We find that the learned trial judge misinterpreted the narrow holdings of Thompson, supra, and Solis, supra, and applied these rules erroneously to the facts of the present case. Appellees concede, in their brief, that Thompson, supra, limits its holding to risks directly associated with the blaze itself; and the holding of Solis is likewise obviously limited to freeing the landowner from owing a duty to policemen for his negligence in not preventing ordinary risks (allowing the sniper to get on the roof) which he should have prevented anyway, and for which the police were summoned in the first place.
However, a professional rescuer may recover for injury caused by a risk which is independent of the emergency or problem he has assumed the duty to remedy. Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971); Briley v. Mitchell, 238 La. 551, 115 So.2d 851 (1959); Mayor & Council, Etc. v. Jesse J. Fontenot, 460 So.2d 685 (La.App. 1 Cir.1984).
In Langlois, the Supreme Court stated that firemen, police officers, and others who in their profession of protecting life and property necessarily endanger their safety do not assume the risk of all injury without recourse to others. There, a fireman responding to a rescue call was injured by the inhalation of poisonous gas:
Langlois' primary duty was to drive the fire truck. In regard to his specific duty, it cannot be said that he assumed risks from the gas any more than drivers of other vehicles who might be in and about the premises ...
Although Langlois as a fireman possessed more knowledge than many about the nature of gases and the consequences of exposure to gases, he did not here knowingly and voluntarily encounter the risk which caused him harm. He acted in response to duty, and his exposure to the risk in line with that duty was minimal. Langlois did not embrace a known danger with that consent required by law to bar his recovery for defendant's fault. The defendants must establish by a preponderance of evidence their affirmative defense.
The cases which deny recovery to professional rescuers on the issue of assumption of the risk do so when the injury is suffered in connection with the risk professionally assumed. Therefore, the court in Solis, supra, denied recovery to police officers who were injured by a sniper while responding to a call for help by the proprietor of the hotel where the sniper was located. See also our earlier discussion of Thompson, supra. Injuries for which recovery can be had are those which are not inherent in, or peculiar to, the professional risk. See Langlois, supra.
We do not find from the facts before us at this time that the danger encountered by plaintiff which he alleges caused him injury is necessarily one of the risks assumed by professional firefighters. We see no reason at this time to presume that Raziano would or should be more aware then anyone else of unmarked deep holes in the ground covered by ankle deep water. His professional status as a firefighter engaged in the general act of assisting at the scene of a fire does not imbue him with a superior knowledge of such unobservable hazards; nor does his occupation encompass the risk of injury caused by hazards which exist independently of the fire. The fact that the ground was covered with water from the firefighters' hoses does not necessarily make the hole itself any the less a danger independent of the fire. Further facts must be developed to determine all these things.
Defendants argue that the hole, absent the water, was clearly observable and that it was unnecessary for the landowner to place warning signs or barricades, since there is no obligation on the part of the landowner to warn visitors of conditions which are as obvious to the visitor as to the landowner, citing Ruffo v. Schwegmann Brothers Giant Supermarkets, Inc., 424 So.2d 470 (La.App. 5 Cir.1982). There is, however, another standard which may well apply in the instant case; that is the maxim that it is the duty of one doing construction *1219 work to properly label, mark, or barricade places in the construction site that present an unreasonable risk of harm to persons using the area. Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064 (La.App. 1 Cir.1983); Sullivan v. Gulf States Utilities Company, 382 So.2d 184 (La.App. 1 Cir.1980).
Plaintiff stated in his deposition that the hole itself was approximately four feet square, a graded concrete vault approximately ten to fifteen feet deep. Plaintiff fell in the top of the hole and the water at that point was chest deep, the hole being approximately four feet eight inches in that portion. Whether or not an unmarked and unbarricaded hole of that size in a construction site presented an unreasonable risk of harm which required marking by the landowner or contractor doing the work, and whether the fact that ankle deep water covering the area and obscuring the actual landscape exculpated the owner and transformed the danger into a hazard of the professional rescuer, are questions of fact to be determined by the trial court after a full trial on the merits at which all the facts are fully developed.
Under Louisiana Code of Civil Procedure Article 966, a party may obtain summary judgment when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. We do not find that the facts before us in the record at this time warrant this conclusion. Only when reasonable minds must inevitably concur is a summary judgment warranted and any doubts should be resolved in favor of a trial on the merits. Cates v. Beauregard Elect. Coop., Inc., 328 So.2d 367 (La.1976).
Since we find that the so called "fireman's rule" may be inapplicable in this case, there is, indeed, a genuine issue of material fact as to whether or not the defendants were negligent in the instant case, which can only be determined by a trial on the merits. Therefore, it was manifest error for summary judgment to be awarded at this juncture.
For the foregoing reasons, the judgment of the trial court maintaining defendants' exception of prescription, as well as the judgment granting summary judgment in favor of the defendants, are reversed and set aside and the entire case is remanded to the trial court for further proceedings and trial on the merits. Appellees-defendants are taxed with all costs of these appeals.
REVERSED, SET ASIDE AND REMANDED.
NOTES
[1] La.C.C.P. Art. 1153Amendment relates back When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.