Thomas D. HUDSON, Plaintiff-Appellant,

v.

JANESVILLE CONSERVATION CLUB, The Continental
Insurance Company, Defendants-Respondents,

ROCK COUNTY, Defendant-Respondent-Petitioner.

Supreme Court

*No. 90-1449. Oral Argument March 23, 1992.—Decided May
20, 1992.*

(Also reported in 484 N.W.2d 132.)

For the defendant-respondent-petitioner there were briefs by *Thomas A. Schroeder,* Rock County Corporation Counsel, Janesville and oral argument by *Mr. Schroeder.*

For the plaintiff-appellant there was a brief by *Robert I. DuMez* and *O'Connor & Willems, S.C.,* Kenosha and oral argument by *Mr. DuMez.*

LOUIS J. CECI, J. This case is before the court on petition for review of an unpublished decision of the

court of appeals, dated May 2, 1991, which reversed an order and judgment of the circuit court for Rock County, the Honorable John H. Lussow, Circuit Judge. The circuit court's order granted summary judgment to the defendant, Rock County (the county), and dismissed the complaint of the plaintiff, Thomas D. Hudson (the plaintiff). The issues presented are whether sec. 895.52(2)(b), Stats.,[1] requires that a person injured by a wild animal be engaged in recreational activity before the property owner will be immune from liability for the person's injuries and whether a captive buck deer is a "wild animal" within the meaning of sec. 895.52(2)(b). We hold that sec. 895.52(2)(b) does not require that a person injured by a wild animal be engaged in recreational activity before the property owner will be immune from liability for the person's injuries and that a captive buck deer is a wild animal within the meaning of sec. 895.52(2)(b). We therefore reverse the court of appeals.

The undisputed facts of the case are as follows.[2] On December 17, 1987, the plaintiff was savagely attacked by a buck deer in a deer pen at Rock County's Sports-

---

[1]Section 895.52(2)(b), Stats., provides:

**895.52 Recreational activities; limitation of property owners' liability.**

. . .

(2) NO DUTY; IMMUNITY FROM LIABILITY. . . .

. . .

(b) Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner is liable for any injury to, or any injury caused by, a person engaging in a recreational activity on the owner's property or for any injury resulting from an attack by a wild animal.

The exceptions provided in subs. (3) to (6) are not germane to this appeal.

[2]We borrow heavily from the plaintiff's brief here and largely repeat the plaintiff's colorful fact recitation verbatim.

man's Park. The plaintiff had entered the pen at the invitation of his uncle, Darrell Bambrough, to assist in feeding the deer. At the time, Mr. Bambrough was employed as the "caretaker" of the deer and pheasant pens at Sportsman's Park.

The plaintiff had gone to Sportsman's Park to transport his uncle home for the Christmas holidays. As they were about to leave, Mr. Bambrough decided it would be prudent to give the deer some extra feed, lest they consume what was in their feeder before someone had time to stop by the park and refill the feeder.

At Mr. Bambrough's request, the plaintiff agreed to assist his uncle with this chore. Mr. Bambrough explained that the buck was in rut[3] and had been acting "strangely" of late but that it was fearful of a particular shovel. According to Mr. Bambrough, the mere presence of that shovel inside the pen would keep the buck from interfering with him as he carried the feed to the feeder. Accordingly, Mr. Bambrough asked his nephew to enter the pen, armed with the shovel.

Unfortunately, Mr. Bambrough misgauged the buck's respect for the implement. After Mr. Bambrough had unloaded one bucket of feed and as he was returning with another, the buck dropped its head and, without provocation or warning, charged the plaintiff, who was standing near the entrance to the pen. The onslaught was so sudden that the plaintiff was unable to retreat to safety.

In an instinctive defensive maneuver, the plaintiff dropped the shovel and grabbed the deer's antlers as the beast crashed into him. Locking his elbows and holding

---

[3] "Rut" is defined as "an annually recurrent state of sexual excitement in the male deer; *broadly:* sexual excitement in a mammal (as estrus in the female)." *Webster's Ninth New Collegiate Dictionary* 1033 (1988).

his arms straight out in front of him, the plaintiff attempted to remain upright and protect his chest and stomach from the goring he feared was imminent.

Lunging forward, the buck pinned the plaintiff to the fence. After several desperate minutes, the plaintiff loosened his grip and dashed for the fence gate. The buck, however, gave no quarter and continued its savage attack, lashing out with its antlers. The buck's wild flailings struck the plaintiff and ripped open a gaping wound in the plaintiff's leg. Unable to reach the gate or to defend against the beast's attack, the plaintiff simply hung on to the fence as best he could while the animal thrashed away at him.

After some minutes, the buck backed off, only to immediately charge the plaintiff again. Miraculously, the plaintiff was able to dodge the main thrust of the buck, and its antlers became momentarily entangled in the fence. As the deer freed itself, it resumed attacking the plaintiff. The plaintiff, by this time barely able to stand, found himself at the animal's side. Unable to escape and powerless to do more, the plaintiff ingeniously seized the deer's head in a manner similar to a rodeo contestant and simply hung on. The plaintiff tried desperately to neutralize the fury of the deer's antlers and stay out of the path of yet another onslaught.

The buck, with the plaintiff still clinging to its head, then unleashed its wrath on Mr. Bambrough, whose attempts heretofore to rescue his nephew had been futile. The deer trapped Mr. Bambrough against the fence, but, astonishingly, Mr. Bambrough was small enough to fit between the buck's antlers and received only minor scratches.

At this point, a passerby fortuitously came to the men's rescue. With this samaritan's help, the plaintiff and his uncle were able to retreat to the gate, all the

while warding off the buck's relentless charges. Once outside the pen, the plaintiff collapsed in the snow. Shortly thereafter, he was rushed to the hospital.

The plaintiff commenced a personal injury suit against the county after the county denied his claim for damages.[4] The county moved for summary judgment on the grounds that it was entitled to immunity from liability by the operation of sec. 895.52, Stats. The circuit court granted summary judgment to the county and dismissed the plaintiff's complaint, finding that "a deer is a 'wild animal' within the meaning of sec. 895.52(2)(b), Stats., and Rock County is entitled to immunity from liability from any injury to plaintiffs resulting from an attack by a deer in the deer farm display at Sportsman's Park."

The court of appeals reversed, concluding that sec. 895.52(2)(b) only limits a property owner's liability for attacks by wild animals when the injured party is engaged in recreational activity, that the plaintiff was not engaged in recreational activity at the time the injury occurred, and that a buck deer kept in a fenced-in deer display is not "wild" as that term is used in sec. 895.52(2)(b).

We find that sec. 895.52(2)(b), Stats., does not require that a person injured by a wild animal be engaged in recreational activity before the owner of the property where the injury occurred will be immune from liability

---

[4]The plaintiff also named the Janesville Conservation Club and its insurer as defendants. The Janesville Conservation Club owned the deer in the pen at Sportsman's Park and shared some of the caretaking expenses with the county. Prior to the county's motion for summary judgment, the plaintiff settled with the Janesville Conservation Club and its insurer, and they were dismissed from the suit.

under sec. 895.52(2)(b). Because we hold that a captive buck deer is a wild animal under sec. 895.52(2)(b), the county is immune from liability for the plaintiff's injuries.

In reviewing a decision on summary judgment, this court applies the same methodology as the circuit court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 314-15, 401 N.W.2d 816 (1987). We first examine whether a claim has been stated upon which relief can be granted and then whether there is a genuine issue as to any material fact.

The county asserts that the plaintiff's complaint fails to state a claim upon which relief can be granted. The county's argument is based completely upon the provisions of sec. 895.52, Stats. Statutory interpretation is a question of law, which we review *de novo. State v. Wittrock,* 119 Wis. 2d 664, 669, 350 N.W.2d 647 (1984).

The county asserts that under sec. 895.52(2)(b), Stats., a person need not be engaged in recreational activity in order that the property owner be immune from liability for any injuries caused by wild animals. We agree. Section 895.52(2)(b) provides:

> **895.52 Recreational activities; limitation of property owners' liability. . . .**
>
> . . .
>
> **(2)** NO DUTY; IMMUNITY FROM LIABILITY. . . .
>
> . . .
>
> (b) Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner is liable for any injury to, or any injury caused by, a person engaging in a recreational activity on the

443

owner's property *or for any injury resulting from an attack by a wild animal.*

(Emphasis added.) We find that sec. 895.52(2)(b) unambiguously insulates property owners from liability "for any injury resulting from an attack by a wild animal." A person need not be engaged in recreational activity when injured by a wild animal in order for the property owner to be immune from liability.

In addition, although the question is not presented here, sec. 895.52(2)(b) would also provide a property owner with immunity from liability to anyone injured by a person engaging in a recreational activity, regardless of whether the injured person was also engaged in recreational activity at the time of the injury. If the legislature had intended that all injured persons be engaged in recreational activity at the time of receiving their injury before immunity would be provided to property owners by sec. 895.52, the legislature could have done so.

The statute's statement of legislative intent does not persuade us that we reach an incorrect interpretation. When sec. 895.52 was enacted, the legislature stated that "this legislation should be liberally construed in favor of property owners to protect them from liability." 1983 Wis. Act 418, sec. 1. We find that our interpretation of sec. 895.52(2)(b) furthers this legislative intent.

The plaintiff asserts that our decision in *Shannon v. Shannon,* 150 Wis. 2d 434, 442 N.W.2d 25 (1989), supports his argument that an injured party must be engaged in recreational activity before the property owner will be immune from liability. In *Shannon,* we were confronted with the issue of whether sec. 895.52(2), Stats., could insulate a property owner for injuries sus-

444

tained by a three-year-old girl who nearly drowned in a lake after she wandered onto the defendant's property. We concluded that sec. 895.52 did not apply in *Shannon* because:

> Section 895.52, Stats., only applies to cases of landowner or possessor negligence when a party enters onto the owner's or possessor's land to engage in a "recreational activity." We find that the term "recreational activity" as defined in sec. 895.52(1)(g) does not apply to the activities of Christen Shannon on the day in question because the random wanderings of a three-year-old child are not substantially similar to the activities enumerated in sec. 895.52(1)(g).

*Shannon*, 150 Wis. 2d at 448. However, *Shannon* did not concern injuries caused by a wild animal. Moreover, each time we quoted sec. 895.52(2)(b) in *Shannon,* the phrase we are interpreting today, "or for any injury resulting from an attack by a wild animal," merely appeared as an ellipsis. *See Shannon,* 150 Wis. 2d at 437–38 n.1 and 447. Therefore, *Shannon* is not controlling here.

Our inquiry is not at an end, however, as we must still determine whether a captive buck deer is a "wild animal" under sec. 895.52(2)(b), Stats. The court of appeals decided that "wild animal" does not include animals held in captivity. *Hudson v. Janesville Conservation Club* (No. 90-1449, Ct. App. slip op. at 6, 5/2/91). We disagree. We do not find an animal's captivity dispositive of whether the animal is "wild" within the meaning of sec. 895.52(2)(b).[5]

---

[5]The dissenting opinion asserts that "[t]he majority shields the property owner from a duty of reasonable care by reading the words 'in captivity' into the immunity statute, words that neither

"Wild animal" is not a technical term. We have previously stated that nontechnical words utilized in statutes are to be given their ordinary and accepted meaning when not specifically defined. *Wittrock,* 119 Wis. 2d at 670. *Black's Law Dictionary* 1598 (6th ed. 1990) defines "wild animals" as follows: "**wild animals** (or animals *ferae naturae*). Animals of an untamable disposition, animals in a state of nature." *Webster's Ninth New Collegiate Dictionary* 1349 (1988) defines "wild" as: "wild . . . **1 a:** living in a state of nature and not ordinarily tame or domesticated." The text *Mammals of Wisconsin* states:

> Young deer are gentle and affectionate, and older does usually so. An old buck, however, often develops an ugly disposition, particularly in the rutting season, and may fight anything.

Hartley H. T. Jackson, *Mammals of Wisconsin* 419 (University of Wisconsin Press, 1961). As illustrated by the facts of this case, male deer do indeed have a wild disposition and during certain times of the year may fight anything, including a man armed with a shovel.

---

appear in the statute nor have any relevancy to the purposes of the statute." Dissenting op. at 451. Contrary to that assertion, it is the dissenter who reads words into the statute. The statute unambiguously insulates property owners "for any injury resulting from an attack by a wild animal." Nowhere does the statute say that it insulates property owners from liability for injury resulting from attacks by wild animals only if the wild animal is "not held in captivity and not under the control of a landowner," as the dissent urges is required. Dissenting op. at 452.

A wild animal is a wild animal, regardless of its captivity. If the legislature had meant to restrict the meaning of the term "wild animal" so that it did not include those wild animals held in captivity, it could easily have done so. However, it did not.

This case is not the first time that we have had to determine whether a particular type of animal is wild. In *Sprague-Dawley, Inc. v. Moore,* 37 Wis. 2d 689, 155 N.W.2d 579 (1968), when discussing whether albino rats are "wildlife," we stated:

> The term [wildlife] implies nondomestication and outdoor habitation (even though confined). . . . Sprague-Dawley's breed of albino rats is developed in a controlled environment under precise laboratory conditions. . . .
>
> . . .
>
> It is apparent, therefore, that the Sprague-Dawley rats are not wildlife. They do not, and on good authority cannot, survive in a state of nature. They have been developed by man only on the basis of selective breeding and would not exist, except as an occasional sport, without careful human control and genetic management. The albino rat . . . is a domestic animal, the product of man's dominion over nature.

*Sprague-Dawley,* 37 Wis. 2d at 695–96. We find the above passages from *Sprague-Dawley* helpful in deciding whether a particular type of animal is wild.

If a type of animal normally survives without human assistance in a state of nature, or is nondomesticated and usually is of outdoor habitation, or is of an untamable disposition, then we are of the opinion that the animal is probably wild, as that term is used in sec. 895.52(2)(b). Using this test, we find that a captive buck deer is a wild animal within the meaning of sec. 895.52(2)(b). Deer survive abundantly in this state despite an open hunting season each November. Deer are not generally selectively bred or otherwise domesticated. As illustrated by this case and others that we will

447

discuss below, deer, and in particular male deer, have an untamable disposition, especially during rut.

Other courts have come to similar conclusions. The U.S. Supreme Court, in an 1879 opinion, stated that it is "a matter of common knowledge" that the male deer is a wild animal. *Spring Co. v. Edgar,* 99 U.S. 645, 658 (1879). The plaintiff in *Edgar* was "fiercely attacked by the mischievous buck and greatly injured, bruised, and lacerated. . . ." *Id.* at 653. The buck in *Edgar* was also a captive deer. Although many things have changed since 1879, we do not think that the nature of deer has evolved to the point where a male deer is now considered a domestic animal, whether captive or not.

In 1896, this court discussed the characteristics of deer in *Bormann v. City of Milwaukee,* 93 Wis. 522, 67 N.W. 924 (1896). After stating that "the law recognizes two distinct classes of animals [wild and domestic], and the only difficulty is in determining whether certain animals belong to the one class or the other," *id.* at 524, we stated:

> [Deer and elk] belong to the same family, although elks are the larger; . . . elks, as well as deer, are naturally shy and timorous, fleeing at the sight of men, but easily domesticated; . . . such timidity, however, forsakes the males at certain seasons of the year, and then they are liable to attack each other or whatever animal comes in their way.

*Id.* at 525. In *Bormann,* we necessarily found that male deer and elk are wild, even though captive. Similar to the deer and elk that injured the plaintiff in *Bormann,* the buck deer in this case was also wild.

Perhaps the Louisiana Supreme Court best summed up the nature of captive deer when it poetically stated:

[T]he wild deer may have, to some extent, assumed the appearance of a tame and domesticated animal prior to its attack upon plaintiff. . . .

Nor does it matter that an animal of this kind may be to some extent tame and domesticated; the natural wildness and ferocity of his nature but sleeps, and is liable to be awakened at any moment, suddenly and unexpectedly, under some provocation, as was the case in this instance.

*Briley v. Mitchell,* 238 La. 551, 559, 115 So. 2d 851, 854 (1959) (quoting *Vredenburg v. Behan,* 33 La. Ann. 627, 635 (1881)). It is clear from the facts of this case that the deer that injured the plaintiff was a wild animal.

The plaintiff asserts that the language of our decision in *State v. Lipinske,* 212 Wis. 421, 249 N.W. 289 (1933), supports his position that a captive animal ceases to be wild. We do not agree. We stated in *Lipinske* that:

When . . . a wild animal or fish has been legally appropriated and reduced to possession, it ceases to be a wild animal in the legal sense. The fox farmer has the same title to the foxes held in captivity upon his premises that he has to the horse standing in his stable or that the circus exhibitor has to the animals confined in cages.

*Id.* at 425. The *Lipinske* decision discussed the ability of a person to own a wild animal. It is not relevant to the issue we are confronted with today, whether a captive animal is a wild animal for purposes of sec. 895.52(2)(b).

We hold that sec. 895.52(2)(b), Stats., does not require that a person injured by a wild animal be engaged in recreational activity before the property owner will be

immune from liability for the person's injuries and that a captive buck deer is a wild animal within the meaning of sec. 895.52(2)(b).

*By the Court.*—The decision of the court of appeals is reversed.

WILLIAM A. BABLITCH, J. *(dissenting).* A person who chooses to keep and maintain an otherwise wild animal in captivity on their property should be held to the duty of keeping and maintaining that animal under such reasonable conditions so as to avoid injuries to people coming onto the property. The majority relieves the property owner from such duty for no sound public policy reason and does so only by reading into the statute words that do not appear. I dissent.

The purpose of the legislature in creating this recreational immunity statute was to encourage landowners to open up their lands for recreational use by the public. *See* 1983 Wis. Act 418, sec. 1. The legislature realized that landowners would be reluctant to open up their lands for the enjoyment of others if they were potentially liable for random attacks by wild animals over which they had no control. The legislative intent of sec. 895.52(2)(b), Stats., is not furthered by interpreting the term "wild animal" to include animals held in captivity. There are no words in this statute, and there is no evidence in the legislative history of this statute, to support the notion that the legislature intended to provide that property owners who keep in captivity and maintain control over otherwise wild animals on their land do not have a duty of reasonable care in keeping and maintaining those animals. Nevertheless, that is how the majority interprets this statute. It is an interpretation that has no consistency with the general purpose of the statute. The

legislature could not have intended such an inconsistent, absurd, and unjust result.

I have no quarrel with the majority's conclusion that the injured person does not have to be engaged in "recreational activity" in order for a property owner to be immune from liability for injury caused by a wild animal. And I certainly do not have any quarrel with the majority's most unstartling conclusion that generally a buck deer is a wild animal. But, the single most important fact in this case is that the buck was held *in captivity* by the defendant; i.e., the property owner kept and maintained control over the animal. For purposes of this statute the buck deer ceases to be a wild animal when it is held in captivity by the landowner. The majority shields the property owner from a duty of reasonable care by reading the words "in captivity" into the immunity statute, words that neither appear in the statute nor have any relevancy to the purposes of the statute. Given the purpose of the statute, a captive animal should not be considered "wild" simply because other members of its species run free and are perceived as being unpredictable at times, i.e., during the rutting season.

It is absurd to conclude that the legislature intended to shield a negligent property owner from liability for injuries sustained from an otherwise wild animal that the property owner kept in captivity and maintained. Many people keep and maintain animals that generally are of an untamable and wild disposition and do so for many reasons. Animal farms are numerous across Wisconsin. For whatever reason, some people keep otherwise wild animals (snakes, minks, ferrets, squirrels, fox, etc.) in their homes or in pens on their property. What possible public policy reason could the legislature have to give these people immunity from liability for injuries caused by their negligent actions in keeping and maintaining

451

these animals? How does the majority's interpretation further the legislature's purpose of encouraging landowners to open their land to the public? In the absence of clear legislative language to the contrary, I cannot understand why the majority chooses to relieve from a duty of reasonable care property owners who choose to keep in captivity and maintain these animals.

A far more reasonable interpretation of the statute is available, one that is consistent with the legislative intent and avoids this absurd and unjust result. I interpret the statute as simply providing that property owners who assert no control over the wild animal have no liability for an attack by a wild animal. In other words the term "wild animals" means those animals of an untamable disposition that exist in a state of nature, not held in captivity and not under the control of a landowner. Where there is no control there is no duty. I dissent.

I am authorized to state that JUSTICE SHIRLEY S. ABRAHAMSON joins in this dissent.