934 So.2d 196 (2006)
Cynthia MARTIN
v.
BOH BROS. CONSTRUCTION CO., LLC.
No. 2005-CA-1300.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 2006.
*197 Harry E. Forst, New Orleans, LA, for Cynthia Martin.
Richard S. Vale, Donald C. Douglas, Jr., Blue Williams, L.L.P., Metairie, LA, for Boh Bros. Construction Company, LLC.
(Court Composed of Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR.).
MAX N. TOBIAS, JR., Judge.
Contractor, Boh Brothers Construction Company, L.L.C. ("Boh Brothers"), appeals a judgment finding it liable for the injuries sustained by the plaintiff, Cynthia Martin ("Martin"), when she fell on uneven pavement while crossing Tulane Avenue in New Orleans while it was in the process of being repaved. Boh Brothers asserts that it is entitled to statutory immunity provided to contractors by La. R.S. 9:2771 and should have been found free from fault by the trial court.
On 16 May 2002, Martin exited the Medical Center of Louisiana (commonly and hereinafter referred to as "Charity Hospital") and began to cross Tulane Avenue in order to catch a bus home. While she was crossing the street, she fell where there was a drop-off in the pavement between two lanes of travel, a differential she estimated at two to three inches.[1] Martin asserts that the drop-off was not readily detected by casual observation.[2] She alleges that at the time she fell, Boh Brothers was grading and re-paving that stretch of Tulane Avenue, and that it created a dangerous drop-off without providing any warning to pedestrians that it existed. Martin filed suit in Civil District Court on 15 May 2003.
Boh Brothers asserted an affirmative defense in its answer that it was statutorily immune from suit pursuant to R.S. 9:2771. It further asserted that Martin was negligent by failing to maintain a proper lookout and failing to act in a prudent manner and was solely at fault for her own injuries.
The case was tried without a jury on 4 April 2005. The trial court received testimony from Martin; her daughter, Kynisha Martin ("Kynisha"); Barbara Tapp ("Tapp"), the owner of Tapp's Uniform and Apparel, where Martin was planning to work before her fall; Raymond Arcement ("Arcement"), a safety engineer employed by Boh Brothers; and Clifton P. Nary ("Nary"), a civil engineer and project manager for Boh Brothers.
Martin testified that on 16 May 2002 she arrived at Charity Hospital for an appointment at the clinic. Following her appointment, she visited Kynisha, who worked at *198 the hospital. She and Kynisha left the hospital together, and Martin began to cross Tulane Avenue, a street with three lanes of travel in each direction, toward the bus stop to return home. Kynisha waited on the sidewalk in front of the hospital, watching her mother cross the street. Martin made it to the median and continued to cross the next three lanes of travel, when she suddenly fell. Martin testified that she did not see the drop-off before she fell; that there were no signs warning pedestrians of the uneven payment; and neither cones nor construction equipment were present to give an indication that the street was being repaved. After she fell, she got up and waved at her daughter to let her know she was okay. Following the fall, Martin was not in immediate pain, other than a skinned knee, but testified that when she arrived home, she felt pain in her left foot.
That evening, Martin reported to the emergency room at Charity Hospital with a broken foot. Her foot was placed in a hard cast and she was told to stay off of her foot for three weeks. She was given crutches and returned home. Martin's cast was removed on 7 August 2002.
Martin also testified that she lost work as a result of the accident. Although she was only told to stay off of her feet for three weeks, Martin testified that she was unable to accept a summer job at Tapp's Uniform and Apparel that she had been offered, because of persistent pain and swelling in her foot. She further testified that she was unable to return to work as a substitute teacher and crossing guard for the Orleans Parish School Board in the fall, with whom she had been employed prior to her accident.
Kynisha testified that she watched her mother cross Tulane Avenue and fall before reaching the other side. She herself had tripped crossing Tulane Avenue at the same crosswalk, but did not fall or injure herself. She confirmed that the drop-off was not visible when approached from the side of Tulane Avenue where Charity Hospital is located.
Tapp testified that she owned Tapp's Uniform and Apparel, a small retail store in New Orleans. She stated that she had hired Martin to work in her store during the summer months, when Martin would be off work from the Orleans Parish School Board. She was going to pay her $200.00 per week, but testified that she had to hire someone else to fill the position after Martin was injured, because even though Martin wasn't confined to crutches for the entire summer, the store was too small and too busy for Martin to negotiate with her cast.
Arcement, the Assistant Safety Director for Boh Brothers, had no personal knowledge of the construction project or site involved in Martin's accident. He did concede, however, that a pavement differential of two or three inches could create a hazardous condition for pedestrians.
Nary was the project manager for the Tulane Avenue re-surfacing project. He testified that Boh Brothers received specifications for the construction site from the City of New Orleans. The city had required Boh Brothers to do the construction at night, so as not to impede traffic on Tulane Avenue during the day. Further, the city had required Boh Brothers to remove all equipment from the site at the end of each night. Nary testified that the city did not make any provisions for warning signs, and that absent such specifications, Boh Brothers would not normally place any warning sign on a re-surfacing project such as this one. He testified that the crew laid one and one-half inches of asphalt and that the drop-off would have only been that high. He disputed Martin's *199 claim that the drop-off was two or three inches.[3]
Following the trial, the trial court awarded Martin $1,481.50 in medical damages, $2,400.00 in lost wages, and $20,000.00 in general damages, plus costs and interest from the date of judicial demand. Her award, however, was to be reduced by 25%, which represented Martin's percentage of fault for the accident. In its reasons for judgment, the trial court found that it had been established that Boh Brothers was re-surfacing the street where Martin fell, and that no barricades, cones, workmen, or equipment were present. The trial court noted that although Boh Brothers argued that the specifications provided by the city didn't require it to mark the area with warning signs or cones, the area was in fact dangerous as "it looked even just until one came upon it." The trial court also noted that Martin had a duty to observe her surroundings, and accordingly found her to partially at fault.
Boh Brothers appealed the judgment of the trial court, assigning three errors. First, Boh Brothers asserts that it is entitled to statutory immunity as a contractor in Louisiana pursuant to R.S. 9:2771. Second, it asserts that the trial court erred in finding it liable to Martin in the absence of a showing of negligence. Finally, Boh Brothers takes issue with the quantum awarded to Martin for her broken foot.
The first error assigned by Boh Brothers is ostensibly a legal one, i.e., whether the trial court properly applied R.S. 9:2771; we review the issue de novo. R.S. 9:2771 provides:
No contractor, including but not limited to a residential building contractor as defined in R.S. 37:2150.1(9), shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration, or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor.
Thus, a contractor may be statutorily immune from damages arising from a defect in the work being done if the defect was due to any fault or insufficiency in the plans or specifications. The purpose of this statute is to relieve a contractor of the responsibility of having to warrant the sufficiency of plans and specifications furnished to him by another. LeBreton v. Brown, 260 So.2d 767, 771 (La.App. 4 Cir.1972). Boh Brothers argues that it is entitled to immunity under the statute because the work was being done pursuant to plans and specifications provided by the city, which did not call for warning signs. Specifically, it directs us to the language in the plans furnished by the city, that "detour or warning signs shall be provided and placed as may be directed by the Director [city]." Boh Brothers maintains that this language prohibited the placement of any warning signs at the site unless the city so directed.[4] *200 However, as discussed infra, the failure of the city to specify that warning signs be placed to warn pedestrians of an unreasonable risk of harm does not automatically shield Boh Brothers from liability.
Boh Brothers also argues that the drop-off between lanes of travel on Tulane Avenue was unavoidable in the paving process and standard in the industry. While these assertions may be true, the defects complained of in this litigation include not only the depth of the drop-off, which Martin asserts was two or three inches, but also Boh Brothers' failure to mark the area as a construction zone, which would have provided some warning to pedestrians that there might be irregularity in the pavement. Boh Brothers' arguments that the specifications provided to it did not include provisions for warning signs or cones, and that the fact that the street was being resurfaced was plainly visible to pedestrians by the striations in and coloration of the lanes awaiting asphalt, are not persuasive under Louisiana law.
Although R.S. 9:2771 may provide a shield to contractors for liability to third parties for defects in plans or specifications provided to it, a contractor may not be entitled to statutory immunity under R.S. 9:2771 if it has reason to believe that adherence to the plans and specifications provided to it may create a hazardous condition or unreasonable risk of harm. Recotta Trucking Co., Inc. v. State through DOTD, 573 So.2d 526, 527 (La. App. 4 Cir.1990). In the present case, the trial court found that it was not merely the presence of the drop-off itself that caused Martin to fall, but the lack of any warning to pedestrians approaching from the Tulane Avenue side of the street that there was a drop-off in the pavement or that the street was being re-surfaced, that constituted an unreasonable risk of harm. Because we review a determination of unreasonable risk of harm (a fact-intensive determination) under the manifest error/clearly wrong standard, we look to whether the determination of the trial court was reasonable in light of the evidence contained in the record on appeal.[5]
The evidence at trial preponderates to show that there was no warning and very few visible clues to a pedestrian crossing the street from the side adjacent to Charity Hospital that there might be a drop-off in the middle of the crosswalk. The photographs contained in the record on appeal taken from the vantage of a pedestrian crossing in the same manner as Martin confirms this: the far lane that had been graded and was lower than the rest of the street is not clearly visible. We also note that Tulane Avenue is a busy street, heavy at the point of Martin's injury with both automotive and pedestrian traffic. The risk that a pedestrian might fall and injure himself or herself was high, especially given that many of those departing Charity Hospital might reasonably be expected to be elderly, infirm, or physically impaired. Thus, we do not find that the trial court was manifestly erroneous or clearly wrong in its determination that *201 Boh Brothers' failure to mark the construction zone or in some way warn pedestrians of the uneven pavement created an unreasonable risk of harm.
Boh Brothers argues that Martin did not put forth any evidence of negligence on its part that could render it liable to her for her injuries. However, this court has held that a company performing construction work has a duty to properly label, mark, or barricade places in a construction site that present an unreasonable risk of harm to passersby. Carr v. Boh Bros. Const. Co., Inc., 557 So.2d 356 (La.App. 4 Cir.1990); Toledano v. Sewerage and Water Bd. of City of New Orleans, 95-1130, pp. 4-5 (La.App. 4 Cir. 3/14/96); 671 So.2d 973, 976. Insofar as Boh Brothers had a duty to warn pedestrians of an unreasonable risk of harm (determined by the trial court to be the unmarked drop-off), its failure to do so constituted a breach of that duty, which sounded in negligence. Further, it is undisputed that the unmarked, uneven pavement caused Martin's fall and injury. Thus, we find this assignment of error to be without merit.
Finally, Boh Brothers takes issue with the quantum awarded in this matter, insofar as Martin sustained a broken foot for which she only received treatment for approximately eleven weeks (or until the date on which she had the cast removed). Martin asserts, however, that the award is perfectly reasonable given the severity of the injury and given that she was still suffering from pain and swelling three years after the accident. Although Boh Brothers directs us to the award in Mix v. Krewe of Petronius, 95-1793 (La.App. 4 Cir. 5/22/96), 675 So.2d 792, in which the plaintiff was awarded only $8,500.00 for a similar injury, we are mindful that a trial court enjoys great discretion in determining an award of general damages to an injured plaintiff. Wainwright v. Fontenot, 00-0492, p. 6 (La.10/17/00), 774 So.2d 70, 74. We do not find that the trial court abused its discretion in making the award, and thus may not disturb it. Id.
As such, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] The record on appeal reflects that the street was being graded and that one lane of traffic was lower than the lanes of travel immediately preceding it when approached from the side of the street adjacent to Charity Hospital.
[2] Photographs of the pavement both from up close and from the perspective Martin would have had when she crossed the street were entered into evidence. While the unevenness in the pavement is visible up close, it does not appear to be readily visible when approached from Charity Hospital. We also note that there is a pedestrian crosswalk where Martin crossed Tulane Avenue, and the uneven pavement extends through the crosswalk.
[3] The testimony indicates that neither Martin nor Boh Brothers actually measured the drop-off in the crosswalk.
[4] We do not read the language cited by Boh Brothers to prohibit the placement of warning signs by it; it implies that Boh Brothers might be called upon to furnish warning signs at the work site if directed by the city.
[5] The determination of whether a condition presented an unreasonable risk of harm is a fact-intensive analysis that comprises several factors including: (1) the claims and interests of the parties; (2) the probability of the risk occurring; (3) the gravity of the consequences; (4) the burden of adequate precautions; (5) individual and societal rights and obligations; and (6) the social utility involved. Dupree v. City of New Orleans, 99-3651, p. 14 (La.8/31/00), 765 So.2d 1002, 1012.