NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

22-797

DEANNA SMITH

VERSUS

STATE OF LOUISIANA, THROUGH THE
DEPARTMENT OF TRANSPORTATION AND
DEVELOPMENT

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20185856
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Candyce G. Perret, Charles G. Fitzgerald, and Guy E. Bradberry, Judges.

REVERSED AND REMANDED.

**Carl J. Rachal**
**Jeramy Moody**
**Bart Bernard**
**Bart Bernard Injury Lawyers**
**1031 Camellia Boulevard**
**Lafayette, LA   70508**
**(337) 989-2278**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
   **Deanna Smith**

**Matthew Charles Nodier**
**Daniel E. Brauner**
**Amanda E. McGowen**
**Kimberly L. Wood**
**Nodier Law, LLC**
**6663 Jefferson Highway**
**Baton Rouge, LA   70806**
**(225) 448-2267**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **State of Louisiana, through the Department**
   **of Transportation and Development**

**Donald Guidry, Jr.**
**Assistant Attorney General**
**556 Jefferson Street, 4th Floor**
**Lafayette, LA   70501**
**(337) 262-1700**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **State of Louisiana, through the Department**
   **of Transportation and Development**

**PERRET, Judge.**

Mrs. Deanna Smith, Plaintiff-Appellant, appeals the trial court's September 7, 2022 Judgment granting Defendant-Appellee's, State of Louisiana through the Department of Transportation and Development ("LADOTD"), summary judgment and dismissing Mrs. Smith's claims with prejudice. For the following reasons, we reverse and remand for further proceedings.

**FACTUAL AND PROCEDURAL HISTORY:**

According to the parties, LADOTD contracted with JB James Construction, LLC ("JB James") in 2017 to improve and widen Verot School Road in Lafayette. The project included work on the intersection of Camellia Boulevard and Verot School Road. LADOTD provided JB James with the plans and specifications for the project, which included requirements for the placement of warning signs and barricades such as "construction ahead" and "road closed" signs.

On November 20, 2017, Mrs. Smith was taking a routine, brisk walk and attempted to cross the intersection at Camellia Boulevard and Verot School Road. Mrs. Smith took this route often. While she was aware the area was a construction zone, she alleges that she attempted her crossing "at a place designated for pedestrians to traverse [the] intersection." However, before she could complete her traversal of Verot School Road, Mrs. Smith tripped and fell over a construction string or cable that she alleges was not readily discernable.

As a result of her fall, Mrs. Smith injured her right elbow, which ultimately required two surgeries. She filed suit against LADOTD and later amended her petition to name additional defendants, including JB James and Fouke Sand and

Gravel LLC ("Fouke"). [1] The petitions set forth the following allegations of negligence:[2]

> a)      By failing to provide adequate maintenance on the roadway and/ or sidewalks in question;

> b)      By failing to provide adequate inspections and repair of the roadway and or sidewalks [in] question;

> c)      By creating an unreasonably dangerous condition(s) to exist by placing a cable/ obstacle in such a manner that a pedestrian walking along the area would encounter the hazard, leaving the dangerous condition for [an] unreasonable length of time, failing to place any warning/ signage/ flags noting of the hazardous conditions, and any other unreasonably dangerous conditions proved at trial;

> d)      By failing to provide adequate maintenance on the road in question;

> e)      By failing to provide adequate inspections and repair of the road in question;

> f)      By allowing for unreasonably dangerous conditions to exist on the roadway and/ or sidewalk for unreasonable lengths of time, including stretching an ankle high cable across the roadway and/ or sidewalk and adjacent roadside, and any other unreasonably dangerous conditions proved at trial[.]

JB James and Fouke filed a joint motion for summary judgment on June 2, 2020, alleging that Mrs. Smith could not prove her negligence claim because the defect she alleged was open and obvious and they were entitled to immunity pursuant to La.R.S. 9:2771. In support of their motion, JB James and Fouke attached the affidavit of Jeff James, owner of JB James, who attested that the plans were provided by LADOTD, all plans and specifications were followed, and the plans did not call

---

[1] The other defendants, Lafayette City-Parish Consolidated Government and Ernest P. Breaux Electrical, LLC, were dismissed in March 2019 and September 2019, respectively.

[2] The allegations set forth herein are a culmination of those alleged in the original petition as amended by the First Supplemental and Amended Petition for Damages.

for "a designated place for pedestrians to traverse the intersection" nor was such a space created. The affidavit by Prentice Don Young, the JB James Project Manager for the site, was also attached. Mr. Young attested that he inspected the site fifteen minutes before Mrs. Smith's fall and all signs and barricades were present and in their correct locations, which were set forth by the LADOTD plans. Copies of the LADOTD signage plat as well as the inspection log were included. Finally, Mrs. Smith's deposition was attached. In support of her opposition to summary judgment, Mrs. Smith only included photographs of the construction area, taken by her husband on an unknown date and produced during discovery. The trial court granted summary judgment in favor of JB James and Fouke on September 15, 2020 ("the JB James Judgment"). The JB James Judgment was appealed to this court ("*Smith* I").

LADOTD filed several motions for summary judgment in this case, one which was filed on August 20, 2020, and set for January 19, 2021. That hearing date was continued until February 22, 2021. On February 5, 2021, Mrs. Smith filed an opposition, which included a document produced by LADOTD in discovery, "SiteManager Daily Summary." LADOTD explained that this document was a "daily summary report from October 20, 2017 through December 20, 2017." According to the minutes, the trial court denied LADOTD's motion.

Additionally, while the JB James Judgment was on appeal, both LADOTD and Mrs. Smith filed additional motions for summary judgment on March 22, 2021, and April 28, 2021, respectively. LADOTD alleged no duty was owed to Mrs. Smith because the condition was open and obvious, and alternatively, the notice requirement of La.Civ.Code art. 2317.1 cannot be proven. As supporting exhibits, LADOTD attached the affidavits of Jeff James and Prentice Don Young with

corresponding attachments,[3] as well as excerpts from Mrs. Smith's deposition with photographs.

Mrs. Smith sought partial summary judgment on LADOTD's liability arguing that the string/cable was not an open and obvious hazard and that LADOTD had notice because it, or its contractors, put the string/cable in that location. Mrs. Smith then made similar arguments in her opposition to the LADOTD's motion for summary judgment. In both her motion and her opposition, Mrs. Smith provided her deposition, color photographs of the construction scene, and a newly acquired affidavit from a witness, Patrick Reed. Mr. Reed came upon Mrs. Smith while she was on the ground after her fall and came to her aid. In the process of reaching Mrs. Smith, Mr. Reed also tripped over the string/cable, nearly falling. Mr. Reed attested in pertinent part:

> 4. At the time, Verot School Road was undergoing construction to widen the roadway and Deanna Smith was seated on the ground designated for a roadway but was not yet being used for vehicular traffic due to the construction.
>
> 5. I am familiar with this intersection and roadway in question as I live in the vicinity and traversed this area daily around the time of the incident.
>
> 6. I pulled over my vehicle and went to assist Deanna Smith. As I approached Deanna Smith, I tripped over construction string that was strewn across the roadway approximately ten (10) inches off the ground. I nearly fell to the ground as the construction string was really thin and not visible to me nor was the construction string open and obvious to the general public as evidenced by the photographs taken at the scene. (See Exhibit A attached hereto.)
>
> 7. The photographs shown in Exhibit A accurately depict the construction zone and the scene on the day that Deanna Smith fell.
>
> . . . .

---

[3] These were the same affidavits attached to the JB James motion for summary judgment.

4

9.  The construction zone was not roped off nor was there any prohibition for pedestrians to cross the roadway of Verot School Road. In fact, there was a designated area for pedestrians to cross Verot School Road.

10.  The area that Deanna Smith fell was within the designated place for pedestrians to cross Verot School Road. (See Exhibit B attached hereto).

11.  Prior to this incident I would see Deanna Smith walking regularly with her dogs in this area. Additionally, I would see other pedestrians walking the same route as Deanna Smith on the regular basis as this was the only area to cross over Verot School Road onto Camelia Blvd.

In LADOTD's September 24, 2021 memorandum in opposition to Mrs. Smith's partial motion for summary judgment, LADOTD admitted that it inspected the site "*every day*" and attached its response to discovery and "SiteManager Daily Summary" from October 20, 2017 through November 20, 2017.

After a hearing, both motions were denied. The judgement on the LADOTD motion, specified, "there are genuine issues on [sic] material facts whether the DOTD had notice of the condition complained of before the alleged accident" and "there are genuine issues on [sic] material fact whether the condition complained of was open and obvious." LADOTD sought supervisory writs with this court, docket number 21-537, which entered a writ denial on December 16, 2021.

Thereafter, this court handed down its opinion in *Smith* I. *Smith v. State through Dep't of Transp. & Dev.*, 21-192 (La.App. 3 Cir. 3/3/22), 350 So.3d 879. This court affirmed summary judgment in favor of JB James finding that no duty was owed to Mrs. Smith as the construction zone and activity was an open and obvious hazard, and obvious and apparent construction warnings were properly placed ahead of and in the construction zone. Judge Cooks issued a dissent, finding "the myriad of factual conclusions resolved by the trial court, and the majority

5

herein, is wholly inappropriate at the summary judgment state of proceedings." *Id*. at 893.

After the *Smith* I opinion was rendered, LADOTD filed another motion for summary judgment on March 30, 2022. LADOTD asserted that summary judgment was proper and the trial court should apply the law of the case doctrine based on *Smith* I and, alternatively, that Mrs. Smith would not be able to prove the notice requirement of La.Civ.Code arts. 2317 and 2317.1. Attached in support were the affidavits of Jeff James and Prentice Don Young, with the corresponding signage plat, excerpts from Mrs. Smith's deposition with the google map showing her walking route attached, the JB James Judgment signed September 15, 2020, and the October 11, 2021 hearing transcript. Mrs. Smith argued, as she does on appeal, that the string/cable was not open and obvious, that the law of the case doctrine does not apply because new evidence, i.e., Mr. Reed's affidavit, is before the court, and that LADOTD had notice because it or its contractor placed the cable/string across the road and/or Mr. Young's inspection should have discovered the string. Mrs. Smith attached her deposition, photographs of the construction zone, Mr. Reed's affidavit, Judge Cooks's dissent in *Smith* I, and Mr. Young's affidavit. At the hearing, Mrs. Smith asked the court to take the entirety of the record into evidence with respect to her opposition. No objection was made by LADOTD.

The trial court applied the law of the case doctrine and granted LADOTD's motion for summary judgment. The judgment was signed on September 7, 2022. Thereafter, Mrs. Smith brought this timely appeal asserting two assignments of error:

> 1. Whether the Trial Court erred in applying the "law of the case" doctrine when the "law of the case" doctrine does not preclude the Trial Court from considering new and persuasive evidence that was not previously available for consideration that presents a compelling justification to prevent manifest injustice.

6

2.     Whether Defendants were entitled to summary judgment on the grounds that the defect was open and obvious where Plaintiff testified, she never saw the string running across the road before she fell[,] and photographs show the string was difficult to see.

**STANDARD OF REVIEW:**

A trial court's grant of summary judgment is reviewed on appeal de novo. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880.  Thus, the appellate court considers the same criteria as did the trial court, and grants summary judgment where "the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law."  La.Code Civ.P. art. 966(A)(3); *See Dunn v. City of Kenner*, 15-1175 (La. 1/27/16), 187 So.3d 404.  "A fact is 'material' when its existence or nonexistence may be essential to plaintiff's cause of action . . . if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751 (citations omitted).  "A genuine issue is one about which reasonable persons could disagree.  Only if reasonable persons could reach only one conclusion is summary judgment on that issue appropriate." *King v. Town of Clarks*, 21-1897, pp. 1-2 (La. 2/22/22), 345 So.3d 422, 422 (citations omitted).  Furthermore, credibility determinations are inappropriate on summary judgment and should remain for determination by the factfinder. *Hutchinson v. Knights of Columbus, Council No. 5747*, 03-1533 (La. 2/20/04), 866 So.2d 228.

**ASSIGNMENT OF ERROR NUMBER ONE, LAW OF THE CASE:**

On appeal, Mrs. Smith's first assignment of error asserts that the trial court incorrectly applied the law of the case doctrine to grant LADOTD summary judgment.  We agree.

7

"Under the doctrine of 'law of the case,' an appellate court will generally refuse to reconsider its own rulings of law on a subsequent appeal in the same case." *Hernandez v. La. Workers' Comp. Corp.*, 15-118, p. 5 (La.App. 3 Cir. 6/3/15), 166 So.3d 456, 458-59. The first circuit has further explained:

> The reasoning behind the law-of-the-case doctrine is to avoid re-litigation of the same issue, to promote consistency of result in the same litigation, and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. *Jones v. McDonald's Corp.,* [97-2287, La.App. 1 Cir. 11/6/98),] 723 So.2d [492] at 494, *citing Louisiana Land and Exploration Co. v. Verdin,* [96-2629, (La. 12/13/96),] 681 So.2d [63] at 65. Re-argument in the same case of a previously decided point will be barred where there is simply a doubt as to the correctness of the earlier ruling. The law-of-the-case doctrine is not an inflexible law, thus appellate courts are not absolutely bound thereby and may exercise discretion in application of the doctrine. *Jones v. McDonald's Corp.,* 723 So.2d at 495. The doctrine is not applied in cases of palpable error or where, if the law of the case were applied, manifest injustice would occur. *Jones v. McDonald's Corp.,* 723 So.2d at 494, *citing Glenwood Hosp., Inc. v. Louisiana Hosp. Serv., Inc.,* 419 So.2d 1269, 1271 (La.App. 1st Cir.1982). The doctrine applies only against those who were parties to the case when the earlier decision was rendered, and who thus have had their day in court. *Day v. Campbell–Grosjean Roofing & Sheet Metal Corp.,* 260 La. 325, 256 So.2d 105, 107 (1971).

*State ex rel. Div. of Admin., Office of Risk Mgmt. v. Nat'l Union Fire Ins. Co. of La.*, 13-375, p. 9 (La.App. 1 Cir. 1/8/14), 146 So.3d 556, 562–63. The law of the case doctrine "does not apply when the underlying operative facts upon which the court's prior decision was based have changed." *State ex rel. Div. of Admin., Office of Risk Mgmt. v. Nat'l Union Fire Ins. Co. of La.*, 10-689 (La.App. 1 Cir. 2/11/11), 56 So.3d 1236, 1247 n. 7, *writ denied*, 11-849 (La. 6/3/11), 63 So.3d 1023.

In *Smith* I, this court set forth the two theories of liability available to Mrs. Smith in asserting she sustained injuries due to an unreasonably dangerous condition, i.e., negligence under La.Civ.Code arts 2315 and 2316 and strict liability under La.Civ.Code art. 2317, and the applicable analysis of both:

Under both theories of liability, a plaintiff must prove that the condition of the thing presented an unreasonable risk of harm, or was defective, and that this condition of the thing was a cause-in-fact of her injuries. *Seal v. State Farm Fire & Cas. Co.,* 00-2375 (La.App. 4 Cir. 3/20/02), 816 So.2d 868, *writ denied*, 02-1083 (La. 6/14/02), 817 So.2d 1160. Both theories are analyzed under the duty/risk analysis. *Schreiber v. Jewish Fed'n of Greater New Orleans,* 02-992 (La.App. 4 Cir. 1/29/02), 839 So.2d 51, *writ denied*, 03-613 (La. 6/6/03), 845 So.2d 1089. "The duty-risk analysis is employed on a case by case basis." *Daye v. Gen. Motors Corp.,* 97-1653, p. 7 (La. 9/9/98), 720 So.2d 654, 659. Under this analysis, the plaintiff must prove five different elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Christy v. McCalla*, 11-0366 (La. 12/6/11), 79 So.3d 293.

On motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. *See* La. C.C.P. art. 966(D)(1); *see also Schultz v. Guoth*, 2010-0343 (La. 1/19/11), 57 So.3d 1002, 1006.

*Larson v. XYZ Ins. Co.*, 16-745, p. 7 (La. 5/3/17), 226 So.3d 412, 416.

The existence of a duty is a question of law. *Peterson v. Gibraltar Sav. & Loan,* 98-1601, 98-1609 (La. 5/18/99), 733 So.2d 1198.

. . . .

In general, the owner or occupier of land has a duty to keep the property in a reasonably safe condition. *Giorgio v. Alliance Operating Corp.,* 05-2 (La. 1/19/06), 921 So.2d 58. This includes a duty to discover any *unreasonably dangerous conditions* on the premises and either correct the condition or warn potential victims of its existence. *Madden v. Saik,* 511 So.2d 855 (La.App. 4 Cir. 1987), *writ denied*, 514 So.2d 131 (La.1987). Moreover, one doing construction work has a duty to properly label, mark, or barricade places in a construction site that present an unreasonable risk of harm to a passerby. *Martin v. Boh*

*Bros. Constr. Co., LLC,* 05-1300 (La.App. 4 Cir. 6/7/06), 934 So.2d 196. Notwithstanding, a pedestrian has a duty to see that which should be seen and is bound to observe his course to see if his pathway is clear. *Hutchinson v. Knights of Columbus, Council No. 5747*, 03-1533 (La. 2/20/04), 866 So.2d 228.

In cases such as the present one, the facts and surrounding circumstances of each case control and the test applied requires the consideration of whether the construction site was maintained in a reasonably safe condition for persons exercising ordinary care and prudence. In such instances, the courts have adopted a risk-utility balancing test to determine whether such a condition is unreasonably dangerous, wherein the trier of fact balances the gravity and the risk of harm against the individual and societal utility and the cost and feasibility of repair. *See Bufkin v. Felipe's La., LLC*, 14-288 (La. 10/15/14), 171 So.3d 851.

The courts have created the risk-utility balancing test to a consideration [sic] of four pertinent factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature. *Id.*

*Smith*, 350 So.3d at 884-85.

The *Smith* I court spent time considering the second risk-utility factor and whether the condition was open and obvious. If the hazard is open and obvious, "the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff." *Id*. at 885. The court reviewed the summary judgment evidence establishing the presence of road closure signs and barricades; inspection logs and the JB James inspector's affidavit that fifteen minutes prior to Mrs. Smith's fall those barricades and signs were in their proper place; and Mrs. Smith's deposition establishing her awareness of the on-going construction in the area, the fact that she was walking her dog briskly through the construction zone, and that she could not recall the presence of the large signs and barricades on the date of her fall, though she was adamant no cones blocked her path.

Ultimately, the court considered whether the specific presence of the string/cable within the construction zone, which was otherwise identified as a construction zone, was an unreasonably dangerous condition that required a specific warning. Mrs. Smith argued that the area she traversed was a pedestrian path through the construction zone, and the existence of the path created a duty on defendants to warn of the tripping hazard. The defendants presented evidence that the plans and specifications did not set forth a pedestrian walkway through the intersection. Meanwhile, the court found that the only evidence Mrs. Smith presented to support the existence of a pedestrian walkway was her testimony, which fluctuated and was inconsistent throughout her deposition, and a photograph showing gravel connecting the dug-up portion of the road with the concrete that was poured for the new lane construction. Furthermore:

> Smith has failed to present any evidence that, even if such a pedestrian pathway was not included in the construction contract, it appeared that pedestrians enjoyed at least implied permission to cross through the construction site. At no point in her deposition did Smith contend that the Defendants' workers observed her or any other pedestrians crossing through the construction site at this intersection at any time. *See Shafer v. State, through Dep't of Transp. & Dev.*, 590 So.2d 639 (La.App. 3 Cir. 1991).

*Smith*, 350 So.3d at 890. Ultimately, the court concluded

> the Defendants properly placed construction warning signs ahead of and in the construction zone and [] these warning signs and the construction activity were obvious and apparent. Moreover, because the Defendants were neither required to provide a pedestrian walkway nor were they shown to have knowledge of such activity, they had no duty to more specifically warn of the yellow construction string. Thus, Smith, a pedestrian who chose to briskly walk through a construction zone, had a duty to see that which should be seen and is bound to observe whether the chosen path was clear. *See Hutchinson* [*v. Knights of Columbus*, 03-1533 (La. 2/20/04),] 866 So.2d 228.

*Id*. The *Smith* I court concluded that Mrs. Smith failed to carry her burden of proof on summary judgment:

11

> After the Defendants showed that Smith would be unable to bear her burden to prove an essential element of her negligence action, namely that the Defendants owed her a duty, then the burden shifted to her to demonstrate that she would be able to meet the burden at trial. *See Schultz v. Guoth*, 10-343 (La. 1/19/11), 57 So.3d 1002. Despite this burden, Smith failed to produce any affidavit, deposition, or other admissible evidence that the Defendants did have a duty to further warn pedestrians, such as she, who were aware of this construction.
>
> . . . .
>
> Because Smith failed to show, in opposition to the Defendants' motion for summary judgment, that she would be able to bear her burden at trial to prove a duty was owed by Defendants, summary judgment in favor of the Defendants was properly granted by the trial court.

*Id*. at 890-91.

LADOTD's motion for summary judgment similarly argued that no duty was owed to Mrs. Smith[4] because the allegedly hazardous condition was "obvious and apparent" and suggested the trial court, and now this court, should apply the *Smith* I ruling on that issue to LADOTD's motion for summary judgment. Alternatively, LADOTD argued Mrs. Smith cannot prove that LADOTD had notice of the alleged condition. Mrs. Smith, on the other hand, argued against application of the law of the case doctrine because she has produced new evidence since the JB James motion and *Smith* I was decided. Alternatively, Mrs. Smith argues that the *Smith* I decision was incorrect.

The new evidence presented by Mrs. Smith was the affidavit of Mr. Reed. Mr. Reed's affidavit corroborates Mrs. Smith's testimony regarding the existence and visibility, or lack thereof, of the string. In fact, Mr. Reed himself tripped on the string when he went to check on Mrs. Smith but did not fall. He also similarly attested that

---

[4] We note that whether a condition is obvious and apparent is actually a risk-utility factor used in determining breach of a duty. *See Farrell v. Circle K Stores, Inc.*, 22-849 (La. 3/17/23), 359 So.3d 467.

the area in which Mrs. Smith fell was not roped off and was a "designated place for pedestrians to cross Verot School Road." He further attested to seeing other pedestrians traverse this area on a regular basis prior to Mrs. Smith's fall.

We find that the production of Mr. Reed's affidavit assists Mrs. Smith in meeting her burden of proof on summary judgment, which she could not accomplish in the prior appeal. Considering this new evidence and the fact that the application of the law of the case doctrine is discretionary, we decline to apply the law of the case doctrine herein.

**ASSIGNMENT OF ERROR NUMBER TWO, SUMMARY JUDGMENT:**

We now consider the appropriateness of summary judgment, specifically, the issue of whether there are any issues of genuine material fact regarding whether there was an unreasonably dangerous condition for which LADOTD failed to warn pedestrians (i.e., whether LADOTD breached its duty to Plaintiff) and whether LADOTD had notice of the condition.

> Summary judgment on this issue of an unreasonably dangerous condition is warranted upon a finding that no reasonable juror could have found that the defendant was in breach of the duty. If the defendant meets that burden of proof, and the plaintiff fails to establish that he or she will be able to establish the breach element at trial, summary judgment in favor of the defendant is mandated.

*Farrell v. Circle K Stores, Inc.*, 22-849, p. 16 (La. 3/17/23), 359 So.3d 467, 479–80.

As previously quoted from *Smith*, 350 So.3d at 884-85:

> In general, the owner or occupier of land has a duty to keep the property in a reasonably safe condition. *Giorgio v. Alliance Operating Corp.,* 05-2 (La. 1/19/06), 921 So.2d 58. This includes a duty to discover any *unreasonably dangerous conditions* on the premises and either correct the condition or warn potential victims of its existence. *Madden v. Saik,* 511 So.2d 855 (La.App. 4 Cir. 1987), *writ denied*, 514 So.2d 131 (La.1987). Moreover, one doing construction work has a duty to properly label, mark, or barricade places in a construction site that present an unreasonable risk of harm to a passerby. *Martin v. Boh*

*Bros. Constr. Co., LLC,* 05-1300 (La.App. 4 Cir. 6/7/06), 934 So.2d 196.

Recently, the supreme court in reviewing whether a pool of water on the defendant's property was an open and obvious hazard, reiterated the following regarding premise liability claims:

> Whether a claim arises in negligence under La.Civ.Code art. 2315 or in premises liability under La.Civ.Code art. 2317.1, the traditional duty/risk analysis is the same. And now, with La.Civ.Code art. 2317.1's requirement of actual or constructive knowledge of a defect, the result under either should be the same. In any event, a claim under La.Civ.Code art. 2315 typically focuses on whether the defendant's conduct of allowing an unreasonably dangerous condition to exist on its premises is negligent, while a La.Civ.Code art. 2317.1 claim focuses on whether the thing itself is defective; *i.e.*, unreasonably dangerous. But, when the legislature eliminated strict liability for defective things in one's custody by adding La.Civ.Code art. 2317.1, a negligence standard replaced it. The requirements of actual or constructive knowledge of the defect and proof that the defendant could have prevented damage from the defect by exercising reasonable care evidences this shift. We will utilize a duty/risk analysis to determine whether liability exists. *Malta v. Herbert S. Hiller Corp.*, 21-209, p. 11 (La. 10/10/21), 333 So.3d 384, 395 (citing *Posecai v. Wal-Mart Stores, Inc.*, 99-1222, p. 4 (La. 11/30/99), 752 So.2d 762, 765).

> Under the duty/risk analysis, the plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and, (5) proof of actual damages (the damages element). *Id.* (citing *Boykin v. Louisiana Transit Co., Inc.*, 96-1932, pp. 8-9 (La. 3/4/98), 707 So.2d 1225, 1230). If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable. *Id.* (citing *Mathieu v. Imperial Toy Corp.*, 94-952, p. 4 (La. 11/30/94), 646 So.2d 318, 322).

> At trial, Plaintiffs would bear the burden of proving the elements of their claims against Defendants. Thus, for Defendants to prevail on summary judgment, they were required to show an absence of factual support for any of the elements of Plaintiffs' cause of action.

*Farrell*, 359 So.3d at 473. While the duty element is a question of law, in this case, "to keep the premises in a reasonably safe condition" and discover and correct or warn of unreasonably dangerous conditions, the question of breach is one "of fact or a mixed question of law and fact." *Id*. at 473-74.

In *Broussard v. State ex rel. Office of State Buildings*, 12-1238, p. 9 (La. 4/5/13), 113 So.3d 175, 183-84 (footnote omitted), the supreme court further explained:

> the question of whether a defect presents an unreasonable risk of harm [is] "a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts." *Reed v. Wal-Mart Stores, Inc.*, 97-1174, p. 4 (La.3/4/98), 708 So.2d 362, 364 (quoting *Tillman v. Johnson*, 612 So.2d 70 (La.1993) (per curiam)). As a mixed question of law and fact, it is the fact-finder's role . . . to determine whether a defect is unreasonably dangerous. Thus, whether a defect presents an unreasonable risk of harm is "a matter wed to the facts" and must be determined in light of facts and circumstances of each particular case. *E.g.*, *Dupree v. City of New Orleans*, 99–3651, pp. 13-14 (La.8/31/00), 765 So.2d 1002, 1012 (citation omitted); *Reed*, 97-1174 at p. 4, 708 So.2d at 364.[5]

In determining a breach of duty, we consider the risk-utility factors: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and, (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature." *Farrell*, 359 So.3d at 474. "If the application of the risk/utility balancing test results in a determination

---

[5] The supreme court in *Farrell*, however, cautioned that this mixed question of law and fact does not prohibit summary judgment. Instead, the court stated:

> Summary judgment, based on the absence of liability, may be granted upon a finding that reasonable minds could only agree that the condition was not unreasonably dangerous; therefore, the defendant did not breach the duty owed. In such instance, the plaintiff would be unable to prove the breach element at trial.

*Farrell*, 359 So.3d at 478.

that the complained of hazard is not an unreasonably dangerous condition, a defendant is not liable because there was no duty *breached*." *Id*. at 478 (emphasis added).

We will take the factors out of turn. As to the utility of the complained-of condition, the *Farrell* court stated, "[i]f it was meant to be there, it often will have social utility, and in the balancing test, weigh against a finding that the premises was unsafe." *Id*. at 474. Here, there is no evidence of the string's purpose, but it appears to serve some function in the ongoing construction for maintenance and repairs of the road. This court in *Smith*, 350 So.3d at 885, stated, "Undergoing road repairs and renovations to a main roadway and intersections is necessary and desirable[;]" thus weighing against a finding that the construction site was unsafe.

Skipping to factor three, there is no evidence regarding the cost of prevention, and, as in *Farrell*, this court is unable to consider this factor.

The fourth factor looks at the social utility and inherent danger of Mrs. Smith's actions. Mrs. Smith was simply out on a walk, which does not have a particular social utility but is not inherently dangerous by nature. Thus, this factor "does not weigh heavily as a consideration in determining an unreasonably dangerous condition." *Farrell*, 350 So.3d at 479.

Returning to the second factor, the court in *Farrell*, 350 So.3d at 474, explained:

> The likelihood of the harm factor asks the degree to which the condition will likely cause harm. If it is likely to cause harm, that weighs in favor of finding it unreasonably dangerous. If it is unlikely to cause harm, that weighs in favor of it not being unreasonably dangerous. The magnitude of the harm factor asks whether the condition presents a risk of great or small injury and the likelihood of each. The likelihood and magnitude of the harm, includes a consideration of the open and obviousness of the condition.

"For a hazard to be considered open and obvious, it must be one that is open and obvious to all who may encounter it." *Id*. at 478.

In *Farrell*, the plaintiff injured herself when she stepped in a pool of water at a gas station. While her husband pumped gas, the plaintiff took their dog for a walk in a grassy area at the edge of the gas station parking lot. To reach the area, she had to cross a large pool of water. Although crossing at the narrowest part of the water, the plaintiff was unsuccessful in crossing and fell. She alleged that the slippery substance in the water was the hazard, not the pool of water itself. In conducting their breach of duty analysis, the supreme court considered the obviousness and apparentness of the condition. The court noted that the size and location of the condition is relevant. For instance, the same pool of water located at the store entrance, rather than the edge of the parking lot, may be unreasonably dangerous due to its location in a "customarily traversed area[.]" *Id*. at 475. The *Farrell* court concluded that the pool of water in this case was a minimal magnitude of harm considering "the location of the pool of water, the size and condition thereof, and the fact that the condition was apparent to all who may encounter it[.]" *Id*. at 479. Ultimately, the court concluded the plaintiff failed to show she would carry her burden of proof at trial on the breach element of her claim:

> For the reasons set forth above, after applying the risk/utility balancing test, we find that the allegedly hazardous condition, be it the pool of water at the edge of the parking lot or the slippery substance contained within the water, was not an unreasonably dangerous condition. Therefore, Defendants met their initial burden of pointing out the absence of factual support for the breach element of Plaintiffs' claims. Thereafter, the burden shifted to Plaintiffs to produce factual support sufficient to establish the existence of a genuine issue of material fact or that Defendants are not entitled to judgment as a matter of law. Plaintiffs have failed to do so as no reasonable juror could find that Defendants breached the duty owed to Plaintiffs. Consequently, summary judgment in favor of Defendants is mandated.

Further, on the issue of breach, Plaintiffs also advance the argument that the water leak began on June 28, 2019, and Circle K discovered the leak and the resulting standing water, but failed to timely call the City of Pineville to repair the leak or to take any action to warn customers of the danger presented. This argument fails because the standing water did not create an unreasonably dangerous condition. Whether they failed to eliminate or warn against it is irrelevant since we find it is not unsafe.

. . . .

Given our ruling that Defendants did not breach a duty, we pretermit any further discussion of the cause-in-fact element, the scope of the duty element, and damages elements herein.

*Id*.

In *Raziano v. Lincoln Property Co.*, 520 So.2d 1213 (La.App. 5 Cir. 1988), the court concluded that whether a large hole within a construction zone was an open and obvious condition was a fact to be determined after a full trial on the merits, not on summary judgment. The plaintiff was a volunteer fireman responding to a fire at an apartment complex that was under construction. After attempting to put out the fire, the firemen were ordered to pull out from the building. The plaintiff was picking up lines in ankle deep water "when he suddenly stepped into a deep hole filled with water" and was injured *Id*. at. 1215. It was later determined that the hole "was an excavation for an unfinished sewer main for the complex." *Id*. In addition to arguing that a fireman assumes the risk of injury in his duty fighting fires, the defendants in this case also argued that "the hole, absent the water, was clearly observable and that it was unnecessary for the landowner to place warning signs or barricades[.]" *Id*. at 1218. The court concluded the issue was not proper for summary judgment:

There is, however, another standard which may well apply in the instant case; that is the maxim that it is the duty of one doing construction work to properly label, mark, or barricade places in the construction site that present an *unreasonable risk of harm* to persons using the area.

18

*Dunaway v. Rester Refrigeration Service, Inc.,* 428 So.2d 1064 (La.App. 1 Cir.1983); *Sullivan v. Gulf States Utilities Company,* 382 So.2d 184 (La.App. 1 Cir.1980).

. . . Whether or not an unmarked and unbarricaded hole of that size in a construction site presented an unreasonable risk of harm which required marking by the landowner or contractor doing the work, and whether the fact that ankle deep water covering the area and obscuring the actual landscape exculpated the owner and transformed the danger into a hazard of the professional rescuer, are questions of fact to be determined by the trial court after a full trial on the merits at which all the facts are fully developed.

*Id*. at 1218-19.

We reach a result similar to *Raziano* herein. Regarding the second factor, clearly, a string at ankle height can pose a high risk of harm, specifically a tripping and falling risk, to an unknowing pedestrian who comes upon it. However, we must consider whether the string was obvious and apparent. As the supreme court has set forth, the condition must be obvious and apparent to all.

LADOTD presented evidence that signs and barricades warning of the construction zone were present and in their correct place at the time Mrs. Smith fell. Additionally, evidence was presented that the LADOTD plans and specifications did not require a pedestrian passageway and no passage was present. Furthermore, the crosswalk button was disengaged. Thus, we conclude that LADOTD shifted the burden to Mrs. Smith to prove the string was unreasonably dangerous.

Mrs. Smith presented her own testimony as well as Mr. Reed's that the string was difficult to discern and caused both to trip. While the string is vaguely present in the photographs in evidence, the photographs are not of great quality and make it difficult to determine the visibility of the string. Considering both Mrs. Smith and Mr. Reed did not see the string and, in fact, tripped over the string, a reasonable

person could find the condition was not open and obvious to all who may encounter it.

We acknowledge the area was under construction and the construction zone, as a whole, was marked. However, the testimony of Mrs. Smith and Mr. Reed's affidavit suggest that these warnings were not enough to notify pedestrians of the presence of an ankle high string, as both still tripped over the string despite knowing the area was a construction zone. Their statements also suggest that the area remained open to pedestrians. Despite LADOTD's evidence that no pedestrian walkway was set forth in the plans, both Mrs. Smith and Mr. Reed testified that pedestrians continued to cross the intersection in this location and that the area was not blocked off to pedestrians. Thus, reasonable persons could disagree on whether the area remained a customarily traversed area, which could support a finding that the string was an unreasonably dangerous hazard due to its location, and whether the construction signs were enough to warn pedestrians that they may encounter a difficult to see, ankle high string crossing the pathway. Thus, this factor may weigh against a finding that the string was not unreasonably dangerous.

Based on the foregoing we find that reasonable persons could disagree regarding the likelihood of the harm factor, including whether it was open and obvious to all who encounter it, as well as whether the string was ultimately unreasonably dangerous and whether LADOTD breached its duty to Plaintiff.

Despite this finding, LADOTD also argued that Mrs. Smith would not be able to carry her burden in proving that LADOTD had actual or constructive notice pursuant to La.Civ.Code art. 2317.1.

Louisiana Civil Code Article 2317 states: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of

20

persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications[:]"

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

La.Civ.Code art. 2317.1.

Even where LADOTD was a custodian of the construction site, or had garde over the area, Mrs. Smith still must show that LADOTD knew or should have known of the ruin, vice, or defect and that, in exercising reasonable care, the damage could have been prevented. At this summary judgment hearing, there was evidence that LADOTD provided the plans and specifications for the construction job and that the work was performed in accordance with the plans and specifications provided by LADOTD. Despite Mrs. Smith's assertion that Prentice Young of JB James conducted an inspection of the site only fifteen minutes before her fall, his affidavit specifies that he was to conduct daily inspections "of the signs and barricades." It does not state that he conducted an inspection of the entire construction zone or that he looked, or was required to look, for any hazards within the construction zone.

However, as the entire record was admitted at the hearing, and no objection was made by LADOTD, we note that an LADOTD inspection log exists within the record, which was previously attached to a summary judgment motion filed by Mrs. Smith and was attached to LADOTD's opposition to a different summary judgment motion filed by Mrs. Smith. In that opposition, as mentioned previously, LADOTD admitted that it inspected the site every day and those inspections were documented

by the "SiteManager Daily Summary" from October 20, 2017, through November 20, 2017, produced in response to discovery, and both documents were attached as an exhibit to the opposition. On at least one of those days, the summary shows that LADOTD did have direct oversight of the project and corrected a contract worker that was not performing the work in accordance with LADOTD's plans and specifications. On the date of Mrs. Smith's fall, the summary states that the inspector was "Eldridge, Josh" and that the "J.B. James day crew worked from 7:00 am – 5:45 pm." In fact, in that opposition, LADOTD argued that "at the very least there is a genuine issue as to whether the daily inspections by the DOTD were reasonable under these circumstances." We agree.

We find that the evidence showing LADOTD provided daily site inspections, at a minimum, raises a genuine issue regarding LADOTD's daily involvement and constructive notice of the hazard. Thus, summary judgment is not proper at this time.

**DECREE:**

For the foregoing reasons, the trial court's September 7, 2022 Judgment granting the State of Louisiana through the Department of Transportation and Development's motion for summary judgment and dismissing Deanna Smith's claims with prejudice is reversed and remanded for further proceedings. The costs of this appeal are assessed to Appellee, State of Louisiana through the Department of Transportation and Development.

**REVERSED AND REMANDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.